[L. A. No. 15525. In Bank.—June 28, 1937.]

MARY G. SANDERS, Respondent, v. A. H. MAGILL et al., Defendants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), Appellant.

Louis Ferrari, Edmund Nelson and Hugo A. Steinmeyer for Appellant.

Fred A. Wilson and Wilson & Coughlin for Respondents.

CURTIS, J.—On December 1, 1926, the defendants A. H. Magill and Carrie A. Magill executed their promissory note to the Bank of Italy, the predecessor of the defendant and appellant Bank of America National Trust and Savings Association, in the principal sum of $15,000 secured by a deed of trust upon real property in San Bernardino County. On February 15, 1927, the Magills deeded the real property to the defendant J. T. Lyon, who by the deed, assumed and agreed to pay the encumbrance. At a later date Lyon endorsed and guaranteed the note at the bank and also pledged with the bank the thirty shares of stock of the Linda Vista Water Company which is the subject-matter of this action. The stock was transferred on the books of the company to the name of the bank, as pledgee for J. T. Lyon. On October 27, 1930, Lyon conveyed the real property to the defendant Fred Koesel, subject to the deed of trust, and likewise assigned and transferred the stock to Koesel, subject to the pledge. Koesel endorsed and guaranteed the note and the stock was again transferred on the books of the company to the name of the bank as pledgee for Fred Koesel.

On February 3, 1933, the real property conveyed by the deed of trust was sold leaving an unpaid balance on the note found by the court to be $6,450.52. The bank made a demand on the Magills for the balance due on the note, and after considerable negotiation a compromise was agreed upon whereby the Magills were to pay $2,500 and the bank was to endorse the note to A. H. Magill or to his nominee without recourse. This agreement was consummated on May 5, 1933, and the note endorsed and delivered to Mary G. Sanders, the

plaintiff in this action. Thereafter the bank gave notice of sale of said 30 shares of stock as a pledge in which it recited that it was "the owner and holder of said $15,000 note and the pledgee of said collateral security" and that the makers of said note "are indebted to the undersigned thereon in the sum of $5,920.25, together with interest thereon" etc. This notice of sale was dated July 11, 1933, and the time fixed therein for the sale was July 19, 1933.

On July 17, 1933, this action was filed by the plaintiff to enjoin said sale and for judgment that she is the owner of said stock and the promissory note of which the stock is security; that she recover the balance due upon said note as against the two makers and endorsers thereof; that the stock be sold as a pledge and the proceeds applied to the payment of the amount found due, and for general relief. The Magills appeared and by answer admitted all the allegations of the complaint. Lyon and Koesel appear to have dropped out of the case. The bank answered, and also filed a cross-complaint. A demurrer was sustained to the cross-complaint, and an order of dismissal thereof was made by the court. The real controversy was then and is now between the plaintiff and the bank. The trial was had on May 29, 1934. On December 1, 1934, the plaintiff served notice for leave to file an amended complaint to conform to the evidence adduced at the trial. The motion came on for hearing on December 10, 1934, and was resisted by the defendant bank. At the conclusion of the hearing of the motion, the court granted plaintiff leave to file the amended complaint, and further ordered that the cross-complaint of defendant bank be reinstated and considered as refiled and the allegations thereof be deemed denied by the plaintiff. The court thereupon gave judgment in favor of the plaintiff upon her amended complaint. From this judgment, the bank has appealed.

In plaintiff's original complaint she based her right of recovery upon her purchase of the $15,000 note from the defendant bank which, she claimed, carried with it a lien upon the 30 shares of stock as security for the payment of said note. By virtue of her ownership of this note, she asked for a personal judgment against the makers thereof, A. H. and Carrie A. Magill, and the endorsers thereof, J. T. Lyon and Fred Koesel, and that the stock be sold to satisfy the amount found to be due on said note. In the bank's answer to said

complaint, in addition to denying certain allegations thereof, it set up as a special defense that the plaintiff acquired said note as the agent of the Magills, and held the same simply as the trustee of the Magills, that during the negotiations between the Magills and the bank for the compromise of the Magills' indebtedness on said note which resulted in the purchase of said note for $2,500, nothing was said about said 30 shares of stock; that the agreement of compromise was made and entered into upon the mutual mistake of fact in that both parties believed that the security for said note had been exhausted and that said note was unsecured; that the bank would not have entered into said compromise agreement except upon this mistake of fact; that said mistake of fact was not discovered until the commencement of this action, and that the bank "hereby offers to restore to said A. H. Magill and Carrie A. Magill or their agent and nominee, Mary G. Sanders, everything of value that it has received under said compromise agreement". It was further alleged in this separate defense of the bank that all negotiations for the transfer of said note to the plaintiff were had between the bank and the Magills and the consideration of said transfer, that is, said sum of $2,500, was paid by the Magills to the bank and "that the plaintiff herein ever since said date (of transfer) has held and now holds the said note as agent for and as nominee of the said A. H. Magill and Carrie A. Magill, and not otherwise".

Upon the issues as thus made by the complaint and answers, the case went to trial. It was argued and submitted for decision. Some six months after the trial of the action, the plaintiff by leave of court filed her amended complaint to conform to the evidence received on the trial of the action. In the amended complaint the plaintiff changed her position as the absolute owner of said note, and alleged that she held said note for the use and benefit of A. H. Magill, and prayed for judgment for $2,500 only, and for a foreclosure of her said pledge of said 30 shares of stock of said water company.

It is first contended by appellant that the pleadings and evidence show that no right of recovery exists in plaintiff. As the promissory note given by the Magills to the bank was purchased by A. H. Magill and the title thereto taken in the name of the plaintiff, whatever defense the bank has against Magill and his wife would be available as against the plaintiff

who simply holds as trustee of Magill, the real owner thereof. In all our discussion of the case, we shall treat A. H. Magill as the real plaintiff. ■ The amended complaint supported by the evidence shows without dispute that the Magills executed their promissory note in the sum of $15,000 and interest to the bank and a trust deed upon real property to secure the payment of said promissory note, and that they thereafter sold the real property described in said trust deed to J. T. Lyon, who assumed and agreed to pay said promissory note. By this transaction, Lyon became the principal and the Magills the sureties of said note. (*Braun* v. *Crew,* 183 Cal. 728 [192 Pac. 531]; *Williams* v. *Naftzger,* 103 Cal. 438, 440 [37 Pac. 411]; *Tompkins* v. *Powers,* 106 Cal. App. 464, 466 [289 Pac. 685]; and authorities cited in last cited case.) No act of Lyon or of any subsequent owner of said real property could affect or in any way alter this right of the Magills without their consent.

■ A. H. Magill, being a surety on said note, even though he was the original principal thereon, upon paying said note under compulsion, or voluntarily acquiring the same by assignment, was subrogated to all rights of the bank in and to said note. (*Beach* v. *Waite,* 21 Cal. App. 304, 307 [131 Pac. 880]; *Vincent* v. *Garland,* 14 Cal. App. (2d) 725 [58 Pac. (2d) 1320].) By right of subrogation, or as the owner of said note by written assignment from the bank, Magill could proceed against all persons liable for the payment of the balance due on said note. The acquiring of an obligation by the surety does not extinguish the obligation, but the same remains in full force and effect in so far as the rights of the surety to recover from third parties liable upon the obligations are concerned. The bank then is in error in contending that the pleadings and evidence show no right of recovery exists in favor of Magill. Magill not only had the right to pursue any endorser of said note who was personally liable for the balance due thereon, but he was entitled to any existing securities given for the purpose of securing payment of said promissory note. No rule of law is more firmly established than that a surety upon payment of the principal obligation succeeds to all the rights of the principal in and to said obligation. (Secs. 2848 and 2849, Civ. Code; 23 Cal. Jur., p. 1078.)

The appellant relies upon *Gursky* v. *Rosenberg*, 105 Cal. App. 410 [287 Pac. 575], in support of its contention that Magill, when he acquired the note from the bank, simply paid his own debt, and that accordingly he acquired no right to recover the balance due on said note. There is a substantial and material difference in the facts of the two cases. As we have seen, when the Magills sold the encumbered property to Lyon the latter assumed and agreed to pay the note secured by said real property. When Gursky sold to Rosenberg, the mortgaged property was conveyed subject to the mortgage, without any assumption of or any agreement to pay the debt. The court rightly held under this state of facts that Gursky remained primarily liable for the debt, that he never was a surety, and when he acquired the note he simply paid his own debt, the payment of ''which gave him no right of subrogation to the rights of the bank (the payee of said note) against the defendant''. Had the defendant Rosenberg assumed and agreed to pay the mortgage debt, then he would have become personally liable to Gursky for the payment of said note and Gursky would have become the surety, and upon the payment of the debt by the latter, he would have become subrogated to all the rights of the bank.

It is next contended that the amended complaint stated a new and different cause of action than that stated in the original complaint. In the original complaint, the plaintiff sued as the absolute owner of the promissory note which she acquired from the bank. In her amended complaint, she set forth facts showing that she simply held said note for the use of A. H. Magill who advanced the money for the purchase of the note from the bank. The allegations of her amended complaint followed in many respects the special defense of the bank and particularly as to those allegations of the answer wherein it was stated that said note was in fact the property of A. H. Magill and was held by the plaintiff for the use and benefit of Magill. The record of the case shows that the case was tried, particularly on the part of the bank, upon the theory that the plaintiff held said note, not as the owner, but as the trustee of A. H. Magill. Under these conditions we cannot say that the trial court abused its discretion in permitting the plaintiff to file an amended complaint to conform to the evidence. As the amended complaint followed in

many of its essential allegations, those of the bank's answer, we can perceive no reason for the latter's complaint.

At the time the court made its order permitting the plaintiff to file her amended complaint, it also made an order restoring defendant's cross-complaint, and directed that the allegations thereof be deemed denied. It thereupon without the taking of any further evidence in the case, rendered judgment in favor of the plaintiff upon her amended complaint. The appellant contends that by this action it was deprived of any trial upon its cross-complaint. There are two complete answers to this contention. In the first place, the bank made no request to introduce any further evidence in support of its cross-complaint after the order of the court restoring it. It may well be held that it is now estopped from claiming the right to introduce further evidence after its cross-complaint was restored. The second answer to the present contention of the appellant is that the allegations of the cross-complaint followed substantially the allegations of the bank's affirmative defense of its answer. In support of these allegations of its affirmative defense, the bank introduced a number of witnesses who testified fully as to all issues made by said affirmative defense. No claim is now made that the bank has, or had at the time judgment was ordered, any evidence in support of the allegations of its cross-complaint that had not already been introduced in support of the issues made by its answer. It was no doubt due to the fact that the bank had fully covered the case by its evidence taken during the trial that it made no request to introduce any further evidence in support of its cross-complaint after the same had been reinstated by the court.

The further contention of appellant that the court erred in sustaining defendant's demurrer to the cross-complaint is without merit. As stated before, the court upon the hearing of respondent's demurrer to the cross-complaint sustained the demurrer and dismissed the cross-complaint. At the time the court made its order permitting respondent to file her amended complaint, it made its order revoking its previous order dismissing the cross-complaint, ordered the same restored, and ordered it refiled. It is true that the court did not expressly revoke its order sustaining the demurrer, but its action in reinstating the cross-complaint can be given no other effect than an implied order revoking its

previous order sustaining the demurrer. At least the appellant has no just cause to complain that the respondent's demurrer to its complaint was not formally passed upon. Appellant asserts, however, that the sufficiency of the cross-complaint was attacked, and that question should be determined. This question has in fact become moot. The court has made its findings upon the issues made by the cross-complaint, and held that even if the allegations thereof were sufficient, the evidence does not support them. If these findings of fact are sustained, the sufficiency of the pleadings passes from view.

Finally, the appellant contends that under the allegations of its answer and those of its cross-complaint and the evidence supporting these allegations, it was entitled to rescind the sale of the promissory note to plaintiff on the ground that his contract of sale was entered into under a mutual mistake of fact in respect to the 30 shares of water stock. It is claimed by the appellant that when said sale was made neither of the parties thereto knew that said water stock had not been sold, and that they each was of the belief at that time that it had been sold and the proceeds of such sale applied to the payment in part of said promissory note. There is no conflict in the evidence that nothing was said about said water stock in the negotiations between Magill and the bank which led up to the purchase by Magill of the promissory note. Neither is there any conflict in the evidence as to the knowledge of Magill that said stock had not been sold. Magill when he purchased said note from appellant knew nothing about said stock and did not know whether it had been or had not been sold and the proceeds applied in part payment of said note. However, there is ample evidence that certain officers of the bank knew at the time the note was sold to Magill that the bank still held said stock as security for the payment of the balance due on said note. Knowledge of an officer of a corporation within the scope of his duties is imputable to the corporation. (6A Cal. Jur., p. 1166; *Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39, 46 [190 Pac. 359] ; *Blue Diamond Plaster Co.* v. *Industrial Acc. Com.,* 188 Cal. 403, 409 [205 Pac. 678] ; *Gonzalez* v. *Interstate Guaranty Co.,* 218 Cal. 612 [24 Pac. (2d) 462].) Appellant admits that the law is correctly stated in these authorities, and that certain of its officers knew at the time of the sale of said note that the water

stock was pledged for the payment of the balance due on said promissory note and that it had never been sold to satisfy said balance or any part thereof. It contends, however, that while certain officers had this information, the officers or agents who negotiated the sale of said note to Magill had no such information, and that they dealt with Magill without any notice of the true status of said water stock. Therefore appellant contends that the contract of sale was entered into on its part through the mistaken belief that the water stock had been sold and the proceeds applied to the payment of said promissory note prior to the sale of said note to Magill. Appellant's counsel concede that they have found no authority which supports this contention, but nevertheless assert that the position of appellant in this respect is both sound and reasonable. We are not inclined to agree with this statement. It is diametrically opposed to the well-established rule of law above stated that notice to the agent or officer of a corporation is imputable to the corporation itself. Furthermore, such a rule, in our opinion, is fraught with danger and would open up avenues of fraud which would lead to incalculable hazards. It would permit a corporation, by not letting its right hand know what is in its left hand, to mislead and deceive those who are dealing with it in perfectly good faith. We are not prepared at this time to pioneer in this field of jurisprudence. As far as the present case is concerned, we do not believe the facts bear out the premise of the appellant that while certain of its officers knew of the condition of the 30 shares of water stock, the officer negotiating the sale to Magill was not informed as to that matter. There is evidence that the officer of appellant who opened up negotiations with Magill for the purchase of the $15,000 promissory note, and who delivered said note to Magill upon its purchase by the latter, had the 30 shares of water stock in his possession at all times pending said negotiations, and continued in possession thereof for some time after the sale and delivery of said note to Magill. It thus appears that appellant through its officer had actual knowledge that said water stock was held by it as security for the payment of the balance due on said promissory note at the time Magill purchased said note from appellant. There was, therefore, no mistake on its part in the transaction between it and Magill.

The question is also raised as to whether the appellant, conceding that it made the sale of the promissory note to Magill in ignorance of the true status of the 30 shares of water stock, acted in such a manner as to entitle it to rescind the sale after it discovered its mistake.   The evidence shows that the same official of the appellant who negotiated the sale to Magill sent the water stock to the attorney of the bank some time in June or July immediately following the sale of the promissory note to Magill in May, 1933.   He then had the positive knowledge that the appellant still held the stock after it had sold the note to Magill.   This knowledge must be imputed to the appellant.   The latter then, instead of offering to rescind the sale to Magill, attempted to sell the water stock in the manner which we have heretofore indicated.   It took no steps to rescind the sale before it gave notice of sale of said stock, nor at any time thereafter until September 29, 1933, when it filed its answer and cross-complaint in this action.   This was over four months after the sale of the note to Magill and some three months after that official actually delivered said stock to the bank's attorney.   It was the duty of appellant upon the discovery of the mistake (assuming there was a mistake) to rescind promptly.   (Sec. 1691, Civ. Code.) The long delay on the part of the appellant, coupled with its election to sell the water stock as a pledge after it had disposed of the obligation which it secured, was sufficient to bar any relief to which it might have been entitled had it acted promptly as required by the provisions of the section of the code just cited.   (*Bailey* v. *Fox,* 78 Cal. 389 [20 Pac. 868] , *Gamble* v. *Tripp,* 99 Cal. 223 [33 Pac. 851] , *Marten* v. *Burns Wine Co.,* 99 Cal. 355 [33 Pac. 1107], and *Campbell* v. *Title Guarantee etc. Co.,* 121 Cal. App. 374, 376 [9 Pac. (2d) 264].)

The judgment is affirmed.

Edmonds, J., Shenk, J., and Seawell, J., concurred.