[L.A. No. 30282. In Bank. Aug. 27, 1974.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HERBERT KAUFMAN, Real Party in Interest.

---

## COUNSEL

Evelle J. Younger, Attorney General, Robert H. O'Brien, Assistant Attorney General, Herschel T. Elkins and Michael R. Botwin, Deputy Attorneys General, Burt Pines, City Attorney, Ward McConnell and John R. Wilson, Deputy City Attorneys, for Petitioner.

John Wayne Herron, Frederick E. Watson and Brancroft, Avery & McAlister as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

David Daar and Michael R. Newman as Amici Curiae on behalf of Respondent.

No appearance for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—We issued an alternative writ directing respondent court to show cause why it should not set aside its order denying the People's motion for a grant of immunity from criminal prosecution to a deponent in a civil action involving charges of consumer fraud and unfair competition, and compel him to testify on deposition. It is urged on behalf of respondent and real party in interest that, in the absence of specific legislative authorization, a trial court lacks jurisdiction to grant such immunity. We conclude that the court is vested with such jurisdiction and we grant the peremptory writ.

The People commenced the civil proceedings against multiple defendants including Herbert Kaufman, the real party in interest herein, alleging inter alia that the defendants had engaged in a fraudulent scheme designed to mislead members of the public into believing that they could obtain employment in the advertising, modeling or entertainment fields by availing themselves of services offered by defendants.[1] During the course of pretrial proceedings the People arranged to take the deposition of Kaufman. He answered certain background questions but, on the advice of his counsel, refused to respond to any inquiry which tended to connect him with activities germane to the alleged fraud. In each instance the basis for his refusal was that a response to the question could lead to the production of evidence which may tend to incriminate him of criminal conduct and thus

---

[1]Defendants' conduct was alleged to be contrary to Business and Professions Code section 17500 (deceptive advertising) and Civil Code section 3369 (unfair competition). We note at the outset that we are primarily concerned herein with the issue of discovery, a single element of the many-faceted problem presented in actions brought under those sections. Other related issues not involved in the instant case are mentioned in footnote 9, *post.*

It is also charged in the civil action that defendants unlawfully offered a course of training leading to a vocational objective without approval therefor from the Superintendent of Public Instruction. (See Ed. Code, § 29007.5.) No issues are here presented in connection with that charge.

The People seek civil penalties, a permanent injunction, and restitution to injured members of the public.

infringe the constitutional proscriptions against such incrimination. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 13.)

The People then moved for an order which would provide Kaufman "with all possible protection against criminal prosecutions as a result of [his] testimony taken at [the deposition] or at the trial of the pending action" (hereinafter referred to as a protective order). The order as sought would have further limited the use of the deposition to the pending civil action, and would have provided that it would amount "to an effective grant of immunity" from criminal liability. As previously stated, respondent court denied the motion on the ground that it lacked jurisdiction to make such a protective order.[2]

The People's principal contention is that the trial court has jurisdiction to issue the proposed protective order pursuant to the provisions of Code of Civil Procedure section 2019. That section relates to depositions on oral examination and provides in subdivision (b), subsection (1), for numerous court orders designed to facilitate the disclosure of information, to minimize intrusion into private areas, and to maintain the security of such disclosures. Pertinent to the instant inquiry the subsection particularly provides: "the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

We had occasion to consider the scope of Code of Civil Procedure section 2019, subdivision (b), subsection (1), in the case of *In re Lifschutz* (1970) 2 Cal.3d 415, 437 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]. There a psychiatrist was imprisoned when adjudged in contempt of a court order requiring that he disclose on deposition in a civil action communications concerning the mental health of the plaintiff, a former patient. We held that the order to disclose did not infringe constitutional or statutory rights of the psychotherapist; that the psychotherapist-patient privilege (Evid. Code, § 1014) is limited by the patient-litigant exception (Evid. Code, § 1016) when the patient puts in issue particular matters relating to the condition of his mental health. We further held that when "inquiry

---

[2]There appears to be a broad difference of view within the trial courts as to whether such a court is authorized to grant immunity from criminal prosecutions in these or similar circumstances. Protective orders similar to that requested here have, according to the People, been granted in San Luis Obispo County (People v. The Grolier Society, Inc., No. 37394), in San Diego County (People v. American Merchandiser, Inc., No. 332422), and even in Los Angeles County, wherein the instant case originated (People v. Bestline Products, Inc., No. C 2842, and People v. Golden International, Inc., No. C50400).

In the pending civil action all four individual defendants asserted the privilege on deposition, thus frustrating discovery proceedings.

into the confidential relationship takes place before trial during discovery
. . . the patient or psychotherapist may apply to the trial court for a protective order to limit the scope of the inquiry or to regulate the procedure of the inquiry so as to best preserve the rights of the patient. Section 2019, subdivision (b), subsection (1), of the Code of Civil Procedure grants the court broad discretion to issue 'any . . . order which justice requires to protect the party or witness from annoyance, embarrassment or oppression.'" (*Id.* at p. 437.)

Interpreted broadly, *Lifschutz* recognizes that discretion rests in the trial court to control the scope and use of a deposition where a claim of privilege has been tendered and the limits of an exception to the privilege are at issue. The People urge that having held that section 2019 authorizes a protective order in civil proceedings to limit the use of a deposition where such use might otherwise infringe a confidential privilege, we should also hold that the section authorizes the issuance in civil proceedings of a protective order fashioned to render the right against self-incrimination inviolate. It is contended that such could be accomplished by limiting the use of a deposition and the fruits thereof in the event criminal proceedings thereafter should be instituted against the deponent.

It is argued on behalf of the respondent and the real party in interest[3] that the Constitution and the Legislature have authorized judicial grants of immunity only in limited, specific instances (see generally Pen. Code, §§ 1324 and 1324.1 relating to transactional immunity) which do not include grants of use immunity in prosecutions on charges of deceptive advertising, and that in the absence of specific constitutional or legislative authorization a court cannot act. (See Witkin, Cal. Evidence (2d ed. 1966) §§ 928-931.) Some of our earlier decisions are described as having held that a grant of immunity may not be accorded except when directed by the Legislature in specific applications. (See *In re Critchlow* (1938) 11 Cal.2d 751, 760 [81 P.2d 966]; see also *In re Tahbel* (1920) 46 Cal.App. 755, 759 [189 P. 804].)[4] Such decisions, however, might well be char-

---

[3]Kaufman has filed no pleading in the instant proceeding. Amici curiae, representing another defendant in the civil action whose interests are identical to those of Kaufman, has been granted permission to file and has filed a brief and has appeared at oral argument in support of respondent.

[4]*Critchlow* dealt with a statute which expressly granted immunity to witnesses compelled to testify as to gaming violations. In considering the scope of the authorization for granting immunity we stated: "The immunity may also be asserted in any case by a witness compelled in law to appear and answer before any investigating body. The immunity proceeds from the statutory provision and is not an implied or inherent incident of the power to investigate." (*In re Critchlow, supra,* 11 Cal.2d 751, 756.) Although it is clear in that case that the nature of the im-

acterized as interpretations of statutory provisions which dealt *only* with specific grants of immunity. In no instance was it necessary to consider whether a statute, purporting to vest broad general discretion in the trial court to accord immunity in a variety of circumstances, did effectively vest that court with discretion to make valid grants of immunity especially in instances when justice and social policies implicit in legislative enactments compel disclosure.

In more recent years we have given a liberal construction to legislation which purports to relieve an alleged wrongdoer of the threat of criminal prosecution in exchange for incriminating information which the Legislature has deemed to serve some socially desirable policy. Thus, in *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039 [80 Cal.Rptr. 553, 458 P.2d 465] (vacated on other grounds in *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535] [plurality opinion]) we held that although there was no explicit statutory authorization for a grant of immunity when disclosure of incriminating information was compelled by a driver involved in a "hit and run" accident (*id.* at p. 1050), we could, nevertheless, judicially impose restrictions on the use of such evidence. "[W]e . . . hold that where compliance with section 20002 of the Vehicle Code [disclosure of information relative to assertion of claims for property damage] would otherwise be excused by an assertion of the privilege [against self-incrimination], compliance is . . . mandatory and state prosecuting authorities are precluded from using the information disclosed as a result of compliance or its fruits in connection with any criminal prosecution related

---

munity then before the court was deemed to be dependent upon and defined by the statute, there is nothing in *Critchlow* which requires that the legislative authorization be directed to specific as distinguished from general applications. At best, it stands for the proposition that when the Legislature has directed the limits of a grant of immunity, the courts must adhere to such limitations.

In *Tahbel* a juvenile declined to answer questions on grounds of privilege, and for that reason was made a ward of the court. In holding the detention to be illegal the court construed the phrase "criminal case" within the meaning of the privilege against self-incrimination (Const., art. I, § 13) to include any public offense for which the one asserting the privilege may be prosecuted. The court then stated that such a person could not be compelled to answer "unless the law has absolutely secured him against any use in a criminal prosecution of the evidence he may give; and this can only be done by a statutory provision . . . ." (*In re Tahbel, supra,* 46 Cal.App. 755, 758-759.) Neither *Tahbel* nor the cases upon which the court relied (*Counselman* v. *Hitchcock* (1892) 142 U.S. 547 [35 L.Ed. 1110, 12 S.Ct. 195]; *Ex parte Clarke* (1894) 103 Cal. 352 [37 P. 230]; *Karel* v. *Conlan* (1913) 155 Wis. 221 [144 N.W. 266]) dealt with an attempt to fashion a protective order restricting the use of testimony sought to be compelled under some statutory scheme. Nor did any of such cases deal directly with the question whether a grant of immunity which may be substituted for the privilege against self-incrimination must be rooted in specific legislative authorization therefor.

to the accident." (*Id.* at pp. 1056-1057.) The statutory authorization for the grant of immunity in *Byers* was deemed to be implicit in the legislation which compelled disclosure, as such legislation would otherwise be rendered impotent.

We were persuaded in part to the conclusion in *Byers* that authorization existed for the judicial grant of use immunity by United States Supreme Court decisions which deem it to be "imperative to effect an accommodation that will permit government to collect vitally needed information without impairing the purposes of the privilege" against self-incrimination. (McKay, *Self-Incrimination and the New Privacy*, 1967 Sup.Ct.Rev. 193, 204; see *Murphy* v. *Waterfront Comm'n.* (1964) 378 U.S. 52, 79 [12 L.ed. 2d 678, 695, 84 S.Ct. 1594]; *Marchetti* v. *United States* (1968) 390 U.S. 39, 58-59 [19 L.Ed.2d 889, 903-904, 88 S.Ct. 697].) Review of the Supreme Court decisions cited in *Byers* (*Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, 1050-1053) suggested "a form of accommodation which provides the appropriate resolution of the conflicting interests involved in the present case. ■ In brief, those decisions provide (1) that the state may require a person to disclose information otherwise subject to a claim of privilege if in place of the protection conferred by the privilege there is substituted another protection having the same scope and effect as the privilege, namely, immunity from use of the information or its fruits in connection with a criminal prosecution against the person; and (2) that, when consistent with both legislative intent and the effective enforcement of the criminal laws, a court may hold that such immunity exists, and therefore that disclosure is required, *despite the absence of any specific legislative grant of immunity.*" (*Id.* at p. 1049, italics added.)

It was concluded in *Byers* that as the imposition of use restrictions would not (1) frustrate any apparent legislative purpose behind the "hit and run" statute, (2) unduly hamper criminal prosecutions of drivers involved in such accidents, or (3) preclude the Legislature from overriding the judicial grant of immunity if it wished to do so (*id.* at p. 1056), the court was authorized to grant immunity and impose a proper use limitation without infringing constitutional rights against self-incrimination and notwithstanding the absence of any specific legislative authorization. (Accord, *Bailey* v. *Superior Court* (1970) 4 Cal.App.3d 513 [84 Cal.Rptr. 436].)

■ We adhere to our rationale in *Byers*. It is manifest that a grant of immunity with a proper protective order[5] would not frustrate but would

---

[5]No claim is made that the protective order proposed in the instant case would not accord Kaufman the full prospective protection to which he would be entitled in lieu of asserting the privilege against self-incrimination.

further the legislative purpose of suppressing deceptive advertising. Nor would it unduly hamper the prosecution of persons who, in the judgment of the authorities, should be subjected to criminal proceedings. (Cf. *Marchetti* v. *United States, supra,* 390 U.S. 39, 57-59 [19 L.Ed.2d 889, 902-904]; *Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, 1051-1054.) Finally, if in the view of the Legislature, our application of Code of Civil Procedure section 2019 does not conform to legislative intent, that body remains free to redefine the limits of authorization. We thus conclude that pursuant to said code section the respondent court is vested with jurisdiction to issue an appropriate protective order.

■ It is additionally asserted in behalf of the respondent and the real party in interest that the sanctions sought to be imposed against defendants in the action based on alleged deceptive advertising are such that defendants are threatened in that very action with substantial penalties which are actually criminal in nature, and for that reason they cannot be compelled to incriminate themselves. The contention, in net effect, is that however broad the protective order purports to be prospectively, Kaufman is still subject to prosecution in the pending action and thus is exposed to penalties which however described are criminal in character.

The privilege against self-incrimination has been broadly construed to prohibit the use of compelled testimony which would be relevant not only in direct criminal proceedings, but also in proceedings which could lead to a criminal exposure. (*Counselman* v. *Hitchcock, supra,* 142 U.S. 547.) Although *Counselman* recognizes "an ancient principle of the law of evidence, that a witness shall not be compelled, in any proceeding, to make disclosures or give testimony which will tend to criminate him or subject him to fines, penalties or forfeitures" (*id.* at pp. 563-564 [35 L.Ed. at p. 1114]), it is nevertheless held in that case that the objective of the constitutional privilege is "to insure that a person would not be compelled, when acting as a witness in any investigation, to give testimony *which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters,* but it is as broad as the mischief against which it seeks to guard." (*Id.* at p. 562 [35 L.Ed. at p. 1114], italics added.)

In the seminal case of *Boyd* v. *United States* (1886) 116 U.S. 616 [29 L.Ed. 746, 6 S.Ct. 524], relied upon by amici, the United States sought only the forfeiture of personal property under a federal statute which provided that an importer who attempted to defraud the government of import duties could be "fined . . . , or imprisoned . . . , or both; and, in addition to such fine, such merchandise shall be forfeited." (*Id.* at p. 617

[29 L.Ed. at p. 752].) It was held therein that the importer properly relied on the Fifth Amendment in refusing to comply with a subpoena of certain invoices because the forfeiture sought was a criminal penalty. "If an indictment had been presented . . . , upon conviction the forfeiture of the goods could have been included in the judgment. If the government prosecutor·elects to waive an indictment, and to file a civil information against the claimants—that is, civil in form—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities . . . .? This cannot be. . . ." (*Id.* at p. 634 [29 L.Ed. at p. 752].)

*Boyd,* which preceded *Counselman,* does not accord a broader application than that recognized in *Counselman,* that is, a restriction·of the application of the privilege "to criminal matters." *Boyd* stands instead for the proposition that when proceedings are brought under a statute which provides for a criminal exposure as to which the privilege would be applicable, the prosecutor may·not nevertheless compel a witness to incriminate himself by the device of limiting such proceedings to seek only the forfeiture of property, one of the express criminal sanctions set forth in the statute. Such actions "though they may be civil in form, are in their nature criminal" (*id.*) because they effect criminal sanctions. *Boyd* has no application in the instant case because, as will be seen, the statutory provision under which the action for deceptive advertising is brought does not provide for criminal sanctions.[6]

---

[6]Whatever vitality *Boyd* once may have had, it must be noted that it was decided in 1886, long before the United States became an industrialized nation and long before it was necessary to regulate our complex society and expanding economy. Erosion of the rule enunciated therein has been inevitable. (*Enforcing California's False Advertising Law: A Guide to Adjudication* (1974) 25 Hastings L.J. 1105, 1121.)

Amici also rely on out-of-state decisions in support of their contention that the penalties sought in the pending action are themselves criminal in nature, and that therefore a protective order would not accord full protection. Such decisions fail to persuade us to that point of view. Thus, in *Bowles* v. *Trowbridge* (N.D.Cal. 1945) 60 F.Supp. 48, the government sought treble damages in a civil action pursuant to the Emergency Price Control Act, the defendant asserted his privilege and the court upheld such assertion on the ground that the action for damages would not, under the statute, bar a later criminal action against the defendant. The defendant was thus not afforded any immunity in lieu of his privilege against self-incrimination.

In *June Fabrics* v. *Teri Sue Fashions* (1948) 194 Misc. 267 [81 N.Y.S.2d 877] the court stated that the Fifth Amendment privilege may be claimed if the informaton sought "would tend to subject the witness to fine or imprisonment, a forfeiture or confiscation of land, or a penalty." (*Id.* at p. 880.) In that case, however, the witness was ordered to answer. The court noted that the claim of immunity was without substance and merely a device to evade the deposition. The court further stated that even if the testimony were self-incriminating, the witness could be compelled to testify as he would be entitled to immunization.

The People in the civil action alleging deceptive advertising seek the imposition of penalties provided in Business and Professions Code section 17536 and Civil Code section 3370.1.[7] These provisions authorize sanctions in proceedings which otherwise do not seek the levying of traditional criminal penalties and which are described by the Legislature as being civil in nature. The penalty is unquestionably intended as a deterrent against future misconduct and does constitute a severe punitive exaction by the state, but neither it nor the process by which it is imposed is deemed criminal in nature for such reasons. The penalty does not include, for instance, the stigma of a criminal conviction nor does it permit such alternative punishment as the loss of personal freedom with which a defendant in a criminal action is threatened.[8] Additionally those procedures applicable in civil actions are traditionally utilized in the enforcement of the statutory provisions.[9]

---

In *State* v. *Kelly* (Fla. 1954) 71 So.2d 887, the Florida Supreme Court noted that "ordinarily the privilege does not protect from the revealing of facts concerning a civil liability or mere infamy but does extend to forfeiture and penal liability." (*Id.* at p. 889.) However, the witness was *then* charged with a criminal violation relating to matters as to which he properly asserted his privilege before a grand jury.

[7]Business and Professions Code section 17536 provides in pertinent part: "Any person who violates any provision of this chapter [deceptive advertising] . . . shall be liable for a *civil penalty* not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a *civil action* brought in the name of the people . . . ." (Italics added.)

Civil Code section 3370.1 provides in pertinent part: "Any person who violates any provision of this chapter [unfair competition] shall be liable for a *civil penalty* not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a *civil action* brought in the name of the people . . . ." (Italics added.)

[8]"The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." (*In re Winship* (1970) 397 U.S. 358, 363 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].)

[9]In a study of Business and Professions Code sections 17500-17572 (*Enforcing California's False Advertising Law: A Guide to Adjudication, supra,* 25 Hastings L.J. 1105) it is noted that civil rules of pleading apply (*People* v. *Superior Court (Jayhill)* (1973) 9 Cal.3d 283, 288 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191]); that currently at least a civil limitation of actions is applicable (Code Civ. Proc., § 338, subd. 1); that civil discovery procedures would more clearly aid in the accomplishment of the legitimate legislative purpose of the statute without infringing constitutional proscriptions if criminal immunity is granted; that the defendants are not entitled to a jury trial at least pursuant to the Sixth Amendment (see *People* v. *Witzerman* (1972) 29 Cal.App.3d 169 [105 Cal.Rptr. 284]); that the civil burden of proof is applicable (see *United States* v. *Regan* (1914) 232 U.S. 37 [58 L.Ed. 494, 34 S.Ct. 213]); and that a defendant is not entitled to the Sixth Amendment right to confront witnesses against him as in criminal cases (see *United States* v. *Zucker* (1896) 161 U.S. 475, 481 [40 L.Ed. 777, 779-780, 16 S.Ct. 641]). The study concludes that the applicable procedures are predominantly civil in nature.

In *Madonna* v. *State of California* (1957) 151 Cal.App.2d 836 [312 P.2d 257], our appellate court held that the legislative description and treatment of a cause of action as civil in nature as being dispositive of the issue.[10] Although a "criminal" or "civil" label is not in itself determinative of the nature of the action, we deem the Legislature to have directed that criminal sanctions, including limitations of personal freedom and the stigma of a criminal conviction, are beyond the scope of proceedings based upon violations of prohibitions against deceptive advertising. Thus, the sanctions sought here to be imposed are distinguishable from those in *Boyd* v. *United States, supra,* 116 U.S. 616. There, as we have previously noted, the government prosecuted the defendant for a criminal violation under a statute which provided for the full panoply of possible criminal penalties —loss of liberty, fine and forfeiture of the goods on which custom duties were not paid. It was held that the government could not, by seeking only the forfeiture *in lieu of other criminal sanctions,* convert a criminal trial into a civil proceeding with only civil consequences. In the instant case the civil penalty which alone is authorized by the statute on which the present action is brought is not in lieu of criminal sanctions, and the statutory provision does not in any way purport to proscribe criminal conduct. (Accord, *People* v. *Witzerman, supra,* 29 Cal.App.3d 169, 177; *People* v. *Superior Court (Kardon)* (1973) 35 Cal.App.3d 710, 713 [111 Cal.Rptr. 14].)[11]

Although the issue was not squarely presented we have recently considered the nature of the penalties now challenged as being criminal in nature. (*People* v. *Superior Court (Jayhill) supra,* 9 Cal.3d 283.) In addition to the rescission of consumer contracts procured through deceptive advertising, the state sought in that case an award of civil penalties (Bus. & Prof. Code, § 17536), and exemplary damages (Civ. Code, § 3294) for each

---

[10]In *Madonna,* a highway contractor sought to recover from the state a sum of money withheld under a construction contract pursuant to a provision which required a forfeiture of $10 for each violation of a Labor Code provision requiring the payment of a prevailing wage rate. The contractor claimed on appeal that the forfeiture provision was in the nature of a criminal sanction and that certain of his constitutional rights had thus been violated. The court held that the fact the statute itself provided that the penalty was to be recovered in a civil action was "conclusive of the nature of the action," and denied relief. (*Id.* at p. 840; see also *Helvering* v. *Mitchell* (1938) 303 U.S. 391 [82 L.Ed. 917, 58 S.Ct. 630]; *United States* v. *Regan, supra,* 232 U.S. 37; *Hepner* v. *United States* (1909) 213 U.S. 103 [53 L.Ed. 720, 29 S.Ct. 474].)

[11]The state could have, in the instant circumstances, proceeded against the real party in interest by bringing misdemeanor charges against him. (Bus. & Prof. Code, § 17534.) It has not done so and, of course, if the real party in interest is required to respond at deposition or trial the protective order must prevent use of the information disclosed in criminal proceedings, if any, under that or other code provisions.

act of unfair competition. We held that in the absence of a then-applicable statutory command an award of exemplary damages on behalf of the public generally was unauthorized.[12] In so doing we categorized the civil penalties there sought as being in the nature of exemplary damages, when such damages are authorized. (*Id.* at p. 287.) The authorization to award exemplary damages, however, does not convert a civil action into a criminal action insofar as it affects constitutional protections in criminal proceedings. (*Wetherbee* v. *United Ins. Co. of America* (1971) 18 Cal.App.3d 266, 272 [95 Cal.Rptr. 678]; *Gibson* v. *Gibson* (1971) 15 Cal.App.3d 943, 949 [93 Cal.Rptr. 617]; *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 716-717 [60 Cal.Rptr. 398, 29 A.L.R.3d 988].)

For the foregoing reasons we conclude that an award of civil penalties as authorized by the Legislature in the instant case does not expose Kaufman to criminal sanctions against which he is protected by the privilege against self-incrimination.

The petition is granted and the peremptory writ is issued directing the respondent court, after fashioning and issuing an adequate protective order, to compel the real party in interest to respond on deposition and trial to all proper inquiries including those which, except for the protective order, would tend to incriminate him.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

---

[12]As noted, a civil penalty for a violation of Civil Code section 3369 has since been authorized. (Civ. Code, § 3370.1, fn. 7, *supra.*)