[Civ. No. 26031. Fourth Dist., Div. One. Oct. 25, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
FOREST E. OLSON, INC., Defendant and Respondent.

COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, David L. Himelson, Elise Jacobs and Thomas K. Buck, Deputy District Attorneys, for Plaintiff and Appellant.

Rich & Ezer and Shelly Jay Shafron for Defendant and Respondent.

OPINION

**BROWN (Gerald), P. J.**—The People appeal a judgment following a directed verdict entered in favor of defendant Forest E. Olson, Inc. (FEO) in a civil case.

During 1974 and 1975, FEO published newspaper advertisements listing a total of 926 addresses. The ads said the addresses were of homes in Orange and Riverside Counties which FEO had sold within four or eight days. The addresses were compiled by FEO's computer department and given to John Bustetter, a first vice president in charge of marketing and the FEO officer directly responsible for the ad campaign. The computer printout included 286 homes which were part of subdivision developments and which had never been occupied before they were sold by FEO. Although FEO was unable to sell some of these new homes for over a year, it was FEO's practice to not write up a listing agreement for each house until the house was sold; therefore, the computer printout showed these homes as having been sold on the same day they were listed. Bustetter made no effort to verify the accuracy of the printout and the addresses of these new homes appeared in the advertisements. Furthermore,

the advertisements listed 50 additional homes which were not sold in the time period advertised, 10 homes located outside Riverside and Orange Counties and two addresses of industrial rather than residential property. Based on these errors, the trial court found the advertisements false and misleading.

Bustetter testified he did not realize the computer printout was incorrect because the errors did not appear on the face of the printout and he was unfamiliar with FEO's listing practice as to new homes. E. James Peck, executive vice president of FEO in 1974 and 1975 and now president, was the FEO officer who first proposed the ad campaign stressing fast sales. Peck was aware of the listing practice and examined the advertisements but testified he did not find it unusual so many new homes sold within the four- and eight-day periods. Travis Curd, the FEO employee in charge of sales at the subdivisions used in the advertisements, found the use of those homes in the ads "questionable" due to the misleading listing practice.

Based on the misleading advertisements, the People sued FEO and its parent corporation, Coldwell Banker and Company, under Business and Professions Code[1] sections 17500 and 17200. Section 17500 prohibits any advertising "which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading. . . ." The superior court found the reliance by FEO employees on the FEO computer printout reasonable and the degree of care exercised legally sufficient. The People appeal the judgment as to FEO only.

The People do not contend any FEO official connected with the ad campaign had actual knowledge of the misrepresentation. ■ The issue is whether FEO should have known of the errors; whether FEO exercised reasonable care. The evidence presented on the reasonableness of FEO's actions cannot be reweighed on appeal but we may inquire into the standard of care required in a corporate setting such as this.

The duty of reasonable care is not satisfied by blind reliance on representations made by others. *People* v. *Witzerman* (1972) 29 Cal.App.3d 169 [105 Cal.Rptr. 284], holds section 17500 imposes a duty of investigation. Such a duty is particularly applicable where the information relied upon and the sources of verification are both within the corporation disseminating the misleading advertising. The failure to verify and investigate breaches the duty of care when facts are present which would put a reasonable person on notice of possible misrepresentations.

The facts here show the need for an attempt to verify the computer printout, the light burden such an attempt would create and the probable success of an in-

---

[1] All statutory references are to the Business and Professions Code unless otherwise specified.

vestigation. Peck realized the ads contained the addresses of many new tract homes which were subject to the misleading listing practice. Nevertheless, he made no effort to discover whether the use of those addresses was caused by the listing practice. Bustetter, who likewise recognized the many tract home addresses, also made no attempt to verify the printout. A phone call to the FEO employee who supervised sales of the tract homes, Curd, would have resolved the matter; Curd realized the accuracy of the ads was questionable.

Interpreting section 17500 to impose a duty of communication among corporate departments is supported by the well-established rule imputing knowledge of corporate officials to the corporation itself (Civ. Code, § 2332; *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co.* (1959) 168 Cal.App.2d 191 [335 P.2d 995]). FEO argues this rule is inapplicable where no one employee has all the information necessary to realize the advertisements are wrong. *Sanders* v. *Magill* (1937) 9 Cal.2d 145 [70 P.2d 159], rejects this argument, "[S]uch a rule, in our opinion, is fraught with danger and would open up avenues of fraud which would lead to incalculable hazards. It would permit a corporation, by not letting its right hand know what is in its left hand, to mislead and deceive those who are dealing with it in perfectly good faith." (9 Cal.2d at p. 154.) Among Peck, Bustetter and Curd, FEO clearly had the information proving the advertisements were misleading; this knowledge is imputed to the corporate defendant itself.

FEO argues the imposition of a duty to investigate makes section 17500 a strict liability provision. That is not true. This inquiry did not end with the finding of errors in the ads, as would be the case under a rule of strict liability. FEO further contends it should not be held liable because no FEO employee actually "perceived" the misleading nature of the advertisements. This argument misdefines the applicable duty; section 17500 prohibits negligent as well as intentional dissemination of misleading advertising (*Feather River Trailer Sales, Inc.* v. *Sillas* (1979) 96 Cal.App.3d 234 [158 Cal.Rptr. 26]; *People* v. *Superior Court* (*Olson*) (1979) 96 Cal.App.3d 181 [157 Cal.Rptr. 628]).

FEO characterizes section 17500 as "quasi-criminal" and on this basis argues for a narrow, prodefendant interpretation of the statute and against application of the rule imputing knowledge of corporate employees to the corporate defendant. These arguments lack merit because this proceeding is civil (*People* v. *Superior Court* (*Kaufman*) (1974) 12 Cal.3d 421 [115 Cal.Rptr. 812, 525 P.2d 716]). The civil nature of the proceeding also forecloses FEO's double jeopardy argument.

FEO correctly states section 17500 grants the trial court discretion in setting punishment for a violation. This discretion, however, does not encompass use

of the wrong standard to measure defendant's actions; where there has been a violation there is no discretion to find no liability whatsoever.

Judgment reversed.

Cologne, J., and Staniforth, J., concurred.

A petition for a rehearing was denied November 10, 1982.