NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| POM WONDERFUL LLC, | No. 08-56375 |
| Plaintiff - Appellee. | D.C. No. 2:07-cv-002633-CAS |
| v. | MEMORANDUM[*] |
| PURELY JUICE, INC. and PAUL HACHIGIAN, | |
| Defendants - Appellants, | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted November 6, 2009
Pasadena, California

Before: SCHROEDER and IKUTA, Circuit Judges, and SEDWICK,[**] District
Judge.

POM Wonderful LLC ("POM") sued for false advertising under § 43(a) of
the Lanham Act and § 17500 of the California Business and Professions Code, and
for unfair competition under § 17200 of the California Code. POM alleged Purely

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable John W. Sedwick, United States District Judge for the
District of Alaska, sitting by designation.

Juice, Inc. and its president, Paul Hachigian, marketed "100%" pomegranate juice with "no added sugar," but "knew or should have known" the juice was adulterated making the representations false. After a bench trial, the district court found Purely Juice and Hachigian liable and awarded POM damages of $1,192,905, disgorgement of $305,137 in profits, and attorneys' fees and costs of $622,755.52. The parties know the record, so not all facts are set out below.

## I. "Intent" is not a required element of a Lanham Act false advertising claim

It is settled that intent is not an element of a Lanham Act false advertising claim. *See* J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 27:51 (4th ed. 2008) ("McCarthy"). We have made clear by implication that intent is not an element of such a claim. *See William H. Morris Co. v. Group W., Inc.*, 66 F.3d 255, 258-59 (9th Cir. 1995). Therefore, the district court did not err in holding that Purely Juice committed a Lanham Act violation.

## II. The district court did not err in finding "knowledge" under § 17500

The trial court's fact findings are reviewed for clear error. *See* Fed. R. Civ. P. 52(a); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982). Reversal requires a "definite and firm conviction that a mistake has been committed." *U.S. v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Comparing POM's proposed fact findings with the district court's shows the court "uncritically

accepted findings prepared without judicial guidance." *Anderson v. City of Bessemer*, 470 U.S. 564, 571-73 (1985). Whether "the findings issued by the District Court represent the judge's own considered conclusions" is thus in doubt, and so those findings are reviewed with "particularly close scrutiny." *Id.* The trial court will be affirmed "if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision, or if there can be no genuine dispute about omitted findings." *Vance v. Am. Hawaii Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986). "Conclusory and unhelpful findings of fact do not necessarily require reversal if the record supports the district court's ultimate conclusion." *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001).

Knowledge is required under § 17500, which makes unlawful a statement concerning a product for sale made with knowledge of the statement's falsity. *See* Cal. Bus. & Prof. Code § 17500. The duty established by § 17500 "is not satisfied by blind reliance on representations made by others." *People v. Forest E. Olson, Inc.*, 137 Cal. App. 3d 137, 139 (1982). Rather, § 17500 imposes a duty to investigate and verify facts that would put a reasonable person on notice of possible misrepresentations. *Id.* Liability extends to negligent false advertising. *Khan v. Med. Bd. of California*, 12 Cal. App. 4th 1834, 1846 (1993).

Purely Juice contends the district court erred by finding it had the requisite knowledge. We disagree. Purely Juice knew a batch of its product was not 100% pure, without sugar added, from results of the Silliker testing received on February 26, 2007. Further testing revealed that Purely Juice produced additional batches of product that was not 100% pure even after the February 26 report, and Purely Juice left that product on the shelves. This shows Purely Juice sold product it knew, or reasonably should have known, was falsely advertised.

Despite knowing certain industry brokers had "credibility issues" and there were "suitability questions" about some concentrate, Purely Juice did little to vet its broker or suppliers. Purely Juice understood (1) a limited global supply of pomegranates led some concentrate juice manufacturers to blend pomegranate with other juices; and (2) difficult harvesting conditions and lack of refrigeration at processing plants led concentrate manufacturers to add sugar. Nevertheless, Hachigian testified he selected Perma Pom, Purely Juice's broker, by simply "talk[ing] to them and ask[ing] them how long they had been doing pomegranate juice concentrate and so forth." The Perma Pom representative testified suppliers are not subject to any verification process; Perma Pom "take[s] the word of the supplier" and relies on certificates of quality. That Purely Juice instructed its broker to immediately switch suppliers does not undermine the district court's

-4-

conclusion, because Purely Juice's practice was to blindly rely on the underlying representations. *Forest E. Olson, Inc.*, 137 Cal. App. 3d at 139.

The district court did err by concluding (1) Purely Juice was on notice of adulteration as a result of an internal memorandum, which referenced an article not admitted in evidence; and (2) Purely Juice was on notice of adulteration based on general knowledge of foreign and domestic pricing structures from a prior year, but the error was harmless. The record adequately supports the conclusion that Purely Juice "knew or should have known" of the falsity of its representations. *Simeonoff*, 249 F.3d at 891.

III. The district court did not err in finding Hachigian personally liable

Hachigian is liable under the Lanham Act for "torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1986)). The district court found that, as president and founder of Purely Juice, Hachigian "authorized and directed" the acts constituting false advertising under the Lanham Act on the ground that Hachigian was "directly involved in the manufacturing of Purely Juice's '100% pomegranate' product, including the selection of suppliers of the

pomegranate juice concentrate used in this product."  The record shows Hachigian knew of the test results from Silliker and Krueger, was personally involved in making decisions for Purely Juice in response to the results, and had the "final word" on Purely Juice's business decisions.

Hachigian is liable under §§ 17200 and 17500 of the California Business and Professions Code if he personally caused, or, being in control, at least permitted the acts constituting false advertising.  *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984).  Hachigian was "in control" of Purely Juice given his position as president and principal shareholder, his direct involvement in the manufacturing and marketing process, and his involvement in the selection of concentrate suppliers. Hachigian is personally liable under § 17200 based on his control.  *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000).  To show his liability under § 17500, it must also be shown that Hachigian "knew or should have known" of false advertising.  *Toomey*, 157 Cal. App. 3d at 15.  Sufficient proof was given to warrant a finding of knowledge of false advertising by Purely Juice; Hachigian's control of Purely Juice supports finding knowledge.

Hachigian says it is necessary to analyze his liability under the alter ego doctrine.  Personal liability outside the alter ego doctrine exists where the individual was not simply an officer, but also an affirmative actor.  *See* 4 McCarthy

§ 25:24. A corporate officer is liable for torts he personally commits, and "cannot 'hide behind the corporation where he is an actual participant in the tort.'" *Coastal Abstract*, 173 F.3d at 734 (quoting *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)).

IV. The district court's purity standard did not intrude on FDA's function

Purely Juice's contention the district court intruded on FDA's authority by using a market definition of purity for the Lanham Act claim lacks merit. POM did not sue to enforce the FDCA, and the facts show no encroachment on the FDA's authority.

V. The district court did not err in calculating damages

The trial court held Purely Juice products bottled on January 7, February 1, 3, 21, 22, and 24, and April 4, 28, and 30, 2007 contained added sweeteners. Based on a 120-day shelf life, the court held Purely Juice sold adulterated product from January 7, until August 30, 2007. Purely Juice argues the district court extended the period of false advertising by relying on "enjoy by" dates for product unavailable after March 2007. The shorter period it advocated was based on Purely Juice's production cycle, not the time the adulterated product was available to consumers. Purely Juice offered no evidence to show the product was not available after March 2007. Its contention that "[t]he latest dates for collection of

samples for what [POM] alleged was the adulterated product . . . was March 26, 2007" ignores evidence that product with an August 30, 2007 "enjoy by" date, was publicly available and tested by Krueger in June 2007.  The district court did not clearly err in calculating damages.  *Lun v. City of Honolulu*, 963 F.2d 1167, 1170 (9th Cir. 1992).

VI. Purely Juice failed to brief its argument regarding attorneys' fees.

In its statement of issues presented by this appeal, Purely Juice asserts that it appeals the district court's award of attorneys' fees to POM.  Because Purely Juice's brief contains no argument in support of that claim, it is deemed abandoned.  *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001); *see* Fed. R. App. P. 28(a)(9).

AFFIRMED.