Filed 6/13/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ALAMEDA COUNTY, <br><br> Respondent; <br><br> THE PEOPLE, <br><br> Real Party in Interest. | A150264 <br><br> (Alameda County <br> Super. Ct. No. RG15770490) |

## I. Introduction

Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky, the alleged alter ego, principal and sole shareholder of Nationwide and Loan Payment (collectively petitioners) operate a debt payment service that claims to reduce the amount of interest owed by accelerating debt repayment via an extra annual payment. The California Department of Business Oversight and the District Attorneys of four counties (collectively the People) challenge a number of petitioners' business practices and in the underlying action seek civil penalties under Business and Professions Code sections 17200 and 17500, and Financial Code section 12105, subdivision (d), as well as injunctive relief, restitution, disgorgement, the voiding of petitioners' allegedly unlawful contracts, costs and attorney fees. In conjunction with their answer, petitioners demanded a jury trial, which the People successfully moved to strike.

Petitioners sought writ relief, which we initially denied.  On review, our Supreme Court transferred the matter back to this court, with directions to issue an order to show cause why petitioners do not have a right to a jury trial "where the government seeks to enforce the civil penalties authorized under Business and Professions Code sections 17206 and 17536 and Financial Code section 12105, subdivision (d)."

We now grant petitioners' request for extraordinary relief, in part, concluding the "gist" of the statutory causes of action asserted against them are legal, thereby giving rise to a right to jury trial.  However, following the approach taken by the United States Supreme Court in *Tull v. United States* (1987) 481 U.S. 412 (*Tull*), we also conclude the right to jury trial extends only to the issue of liability and that the amount of statutory penalties, as well as whether any equitable relief is appropriate, is properly determined by the trial court.

## II. BACKGROUND

The People have alleged six causes of action against petitioners—engaging as a "prorater" without a business license (Fin. Code, §§ 12200, 12200.1), imposing overcharges and unauthorized charges (Fin. Code, §§ 12314, 12314.1), unlawful use of a lender's name in written solicitations (Bus. & Prof. Code, §§ 17200, 14701), false advertising (Bus. & Prof. Code, § 17500), and unfair competition (Bus. & Prof. Code, § 17200).[1]  The complaint seeks civil penalties of $2,500 for each separate violation of Business and Professions Code sections 17200 and 17500, civil penalties of $10,000 for each separate violation of Financial Code section 12105, subdivision (d), injunctive relief, restitution, disgorgement, and the voiding of petitioners' unlawful contracts, as well as costs and attorney fees.  Petitioners filed an answer denying the People's claims and demanded a jury trial.

---

[1]  Business and Professions Code section 17200 et seq., is generally known as the Unfair Competition Law (UCL).  (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 169.)

After the People successfully moved to strike the jury demand, petitioners filed the instant original proceeding in this court, seeking a writ of mandate under Code of Civil Procedure section 1085. After we summarily denied the writ petition, petitioners filed a petition for review by the Supreme Court, which the high court granted, transferring the matter back to us with directions. We then vacated our prior order denying relief, issued an order to show cause (OSC) and received full briefing by the parties.

## III.   DISCUSSION

### A. *General Principles Governing the Right to Jury Trial*

Under California law, the right to a jury trial in a civil action is afforded both by statute and the California Constitution. (*Shaw v. Superior Court* (2017) 2 Cal.5th 983, 993 (*Shaw*).) "As a general matter, the California Legislature has authority to grant the parties in a civil action the right to a jury trial by statute, either when the Legislature establishes a new cause of action or with respect to a cause of action that rests on the common law or a constitutional provision. . . . Given the Legislature's broad general legislative authority under the California Constitution and in the absence of any constitutional prohibition . . . the Legislature may extend the right to a jury trial to instances in which the state constitutional jury trial provision does not itself mandate a right to a jury trial." (*Id*. at pp. 993–994.)

However, "even when the language and legislative history of a statute indicate that the Legislature intended that a cause of action established by the statute is to be tried by the court rather than by a jury, if the California constitutional jury trial provision itself guarantees a right to a jury trial in such a cause of action, the Constitution prevails and a jury trial cannot be denied." (*Shaw*, *supra*, 2 Cal.5th at p. 994.)

Whether petitioners are " 'constitutionally entitled to a jury trial . . . is a pure question of law that we review de novo.' " (*Monster, LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1224.)

As none of the statutes at issue here provide for trial by jury, we turn our attention to article I, section 16 of the California Constitution, which states in pertinent part: "Trial by jury is an inviolate right and shall be secured to all. . . ." (Cal. Const., art. I, § 16.)

3

"Notwithstanding the breadth of this declaration, past California cases make clear 'that the state constitutional right to a jury trial "is the right as it existed at common law in 1850, when the [California] Constitution was first adopted." ' " (*Shaw*, *supra*, 2 Cal.5th at pp. 994–995.)  "[I]f a proceeding otherwise identifiable in some sense as a 'civil action at law' did not entail a right to jury trial under the common law of 1850, then the modern California counterpart of that proceeding will not entail a constitutional right to trial by jury." (*Crouchman v. Superior Court* (1988) 45 Cal.3d 1167, 1174, italics omitted; *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 *(C & K Engineering)* ["We have long acknowledged that the right so guaranteed . . . is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' "].)**²**

The common law as it existed in 1850 "includes not only the *lex non scripta* but also the written statutes enacted by Parliament." (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286 (*1941 Chevrolet*).)

" 'As a general proposition, "[T]he jury trial is a matter of right in a civil action at law, but not in equity." [Citations.] . . . " 'If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law.  In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action.  A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law.' " ' " (*Shaw*, *supra*, 2 Cal.5th at p. 995, quoting *1941 Chevrolet*, *supra*, 37 Cal.2d at p. 299.)  The right

---

**²** "California's general jury trial statute, section 592 of the Code of Civil Procedure, was enacted in 1872 and codifies the right to jury trial as it existed at common law.  Past California decisions explain that the scope of the right to jury trial embodied in Code of Civil Procedure section 592 parallels the scope of the right to jury trial embodied in the California constitutional jury trial provision and, accordingly, that ' "section 592 provides no independent basis for a right to a jury." ' " (*Shaw*, *supra*, 2 Cal.5th at p. 994, fn. 9.)

to jury trial " 'embraces cases of the same class thereafter arising. . . . The introduction of a new subject into a class renders it amenable to its general rules, not to its exceptions.' " (*1941 Chevrolet*, at p. 300.)

"Determining whether the gist of a claim is in law or equity 'depends in large measure upon the mode of relief to be afforded.' " (*Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856, 867.) " '[I]f the action is essentially one in equity and the relief sought "depends upon the application of equitable doctrines," the parties are not entitled to a jury trial. [Citations.] Although we have said that "the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded" [citation], the prayer for relief in a particular case is not conclusive [citations]. Thus, "[t]he fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury. . . ." ' " (*Shaw*, *supra*, 2 Cal.5th at p. 995, quoting *C & K Engineering*, *supra*, 23 Cal.3d at pp. 8–9.)

## B. *The Right to Jury Trial in Government Enforcement Actions Seeking Statutory Penalties*

Petitioners do not dispute that the statutory causes of action asserted against them did not exist in 1850.[3] Instead, they claim that under the "gist of the action" test, the causes of action are legal and thus carry with them the right to jury trial. This is so, say petitioners, because civil enforcement actions for statutory penalties are "analogous to an action for debt at common law, which is legal in nature."

Petitioners rely largely on *Tull*, in which the United States Supreme Court considered whether the right to jury trial secured by the Seventh Amendment of the United States Constitution extends to both liability and the amount of penalty

---

[3] "Unfair competition statutes appeared in the 1930's." (*Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 282.) The false advertising statute was enacted in 1941, and the proraters licensing statute was enacted in 1957, with its enforcement provisions being added in 2002. (See Bus. & Prof. Code, § 17500, added by Stats. 1941, ch. 63, § 1; Fin. Code, § 12200, amended by Stats. 1957, ch. 498, § 3; Fin. Code, § 12105, added by Stats. 2002, ch. 779, § 5.)

5

assessments under the Clean Water Act. (33 U.S.C. § 1251 et seq.; hereafter Act) The government in that case had sued the defendant for dumping fill on wetlands and sought both injunctive relief and statutory penalties totaling $22.8 million ($10,000 per day during the period of violation). (*Tull*, *supra*, 481 U.S. at pp. 414–415.)

The Seventh Amendment provides in pertinent part: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." (U.S. Const., 7th Amend.) The *Tull* court reiterated that the court has long "construed this language to require a jury trial on the merits in those actions that are analogous to 'Suits at common law.' Prior to the Amendment's adoption [in 1791], a jury trial was customary in suits brought in the English law courts. In contrast, those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." (*Tull*, *supra*, 481 U.S. at p. 417, italics omitted; see *Granfinanciera, S.A. v. Nordberg* (1989) 492 U.S. 33, 41–42 (*Granfinanciera*) [" 'the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791' "].)

Accordingly, the high court has adopted a two-step analysis. "First, we compare [a] statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. [Citations.] Second, we examine the remedy sought and determine whether it is legal or equitable in nature." (*Tull*, *supra*, 481 U.S. at pp. 417–418.) "Our search is for a single historical analog, taking into consideration the nature of the cause of action and the remedy as two important factors." (*Id*. at p. 421, fn. 6.) "[C]haracterizing the relief sought is 'more important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial." (*Tull*, at p. 421.) In that regard, "[w]e have recognized the 'general rule' that monetary relief is legal, [citation], and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment." (*Feltner v. Columbia Pictures Tel.* (1998) 523 U.S. 340, 352.)

The *Tull* court therefore first focused of the historic character of governmental actions seeking civil penalties, explaining that a "civil penalty was a type of remedy at common law that could only be enforced in courts of law. Remedies intended to punish

6

culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." (*Tull*, *supra*, 481 U.S. at p. 422.) "Actions by the Government to recover civil penalties under statutory provisions therefore historically have been viewed as one type of action in debt requiring trial by jury." (*Id.* at pp. 418–419, citing *United States v. Regan* (1914) 232 U.S. 37 [assuming right to jury trial in civil penalty actions]; *Hepner v. United States* (1909) 213 U.S. 103, 115 [affirming directed verdict in statutory penalty case].)

The government's action seeking statutory penalties under the Clean Water Act was, thus, "clearly analogous to the 18th-century action in debt, and federal courts have rightly assumed that the Seventh Amendment required a jury trial." (*Tull*, *supra*, 481 U.S. at p. 420.)

The court rejected the government's assertion that the "closer historical analog" was an "action to abate a public nuisance," which has long been recognized as being an equitable matter as to which there is no right to jury trial. (*Tull*, *supra*, 481 U.S. at p. 420.) Even assuming an action under the Clean Water Act can be so characterized, the fact remained, said the court, that it also is properly characterized a legal "action in debt." (*Id.* at pp. 420–421.)

Turning specifically to the civil penalty provision of the Act (33 U.S.C. § 1319(d)), the Supreme Court also pointed out it "does not direct that the 'civil penalty' imposed be calculated solely on the basis of equitable determinations . . . but simply imposes a maximum penalty of $10,000 per day of violation."[4] (*Tull*, *supra*, 481 U.S. at p. 422.)

---

[4] With respect to *liability* for a penalty, section 1319(d) of title 33 of the United States Code provides in pertinent part: "[a]ny person who violates [numerous sections] of this Act . . . , or any permit condition . . . or any requirement imposed in a pretreatment program . . . , and any person who violates any order issued by the Administrator . . . *shall be subject to a civil penalty* not to exceed $25,000 per day for each violation." (Italics added; see *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.* (11th Cir. 1990) 897 F.2d 1128, 1138 ["The Clean Water Act was amended by the passage of the Water Quality Act of 1987, Pub.L. No. 100-4, 101 Stat. 7 (1987). The amendment to section 1319(d) [of title 33 of the United States Code], effective February 4, 1987,

It was also clear Congress wanted the courts "to consider the need for retribution and deterrence"—the hallmark of *legal* penalties historically enforced in courts of law—"in addition to [equitable] restitution, when it imposed civil penalties." (*Tull, supra,* 481 U.S. at p. 422.) Thus, "[a] court can require retribution for wrongful conduct based on the seriousness of the violations, the number of prior violations, and the lack of good-faith efforts to comply with the relevant requirements. [Citation.] It may also seek to deter future violations by basing the penalty on its economic impact."[5] (*Id.* at pp. 422–423.) Given the "authorization of punishment to further retribution and deterrence," the Act's penalty provision "reflects more than a concern to provide equitable relief" to "extract compensation or restore the status quo," and thereby authorizes relief that was "available only in a court of law" and to which the right of jury trial attaches. (*Id.* at pp. 422–423.)

The high court also made clear that the fact the Act also authorizes equitable relief does not foreclose the right to jury trial. "[I]f a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as "incidental" to the equitable relief sought.' " (*Tull, supra,* 481 U.S. at p. 425, citing *Curtis v. Loether* (1974) 415 U.S. 189, 196, fn. 11.)

However, the court went on to explain that the defendant's right to jury trial did not extend to determining the amount of the penalty. (*Tull, supra,* 481 U.S. at pp. 425–426.) "At the time [the] case was tried, [the Act] did not explicitly state whether juries or

---

changed the [] language to state that a violator 'shall be subject to a civil penalty not to exceed $25,000 per day for each violation.' "].) Accordingly, once liability is found, a penalty necessarily follows; discretion exists only as to the amount of the penalty.

[5] With respect to the *amount* of the penalty, section 1319(d) states: "In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." (33 U.S.C. § 1319(d).)

trial judges were to fix the civil penalties." (*Id.* at p. 425.) The Act was subsequently amended, however, to specify that trial judges are to perform "the highly discretionary calculations necessary to award civil penalties after liability is found." (*Ibid.*) The court thus also had to determine whether Congress can, "consistent with the Seventh Amendment, authorize judges to assess civil penalties." (*Tull*, at p. 425.)

The Supreme Court concluded Congress can permissibly do so. (*Tull*, *supra*, 481 U.S. at pp. 426–427.) The Seventh Amendment " 'was designed to preserve the basic institution of jury trial in only its most fundamental elements,' " and "[t]he assessment of a civil penalty is not one of the 'most fundamental elements.' " (*Tull*, at p. 426, quoting *Galloway v. United States* (1943) 319 U.S. 372, 392.) "[H]ighly discretionary calculations that take into account multiple factors are necessary in order to set civil penalties under the Clean Water Act," and "[t]hese are the kinds of calculations traditionally performed by judges." (*Tull*, at p. 427.) Thus, because fixing the amount "of a civil penalty is not an essential function of a jury trial," the "Seventh Amendment does not require a jury trial for that purpose in a civil action." (*Tull*, at p. 427.)

Accordingly, *Tull* appears to provide substantial guidance on the question that our high court has asked us to address. Indeed, in *1941 Chevrolet*, our Supreme Court, in extensively canvassing historic English common law, not only concluded that government forfeiture actions, like the one before it, were actions tried in the Court of Exchequer in which there was a right to jury trial, but also observed that "[c]ases involving penalties to the Crown, other than forfeiture of conveyances and goods, were also tried by jury in the Court of Exchequer." (*1941 Chevrolet*, *supra*, 37 Cal.2d at p. 295.)

The People nevertheless maintain *Tull* is inapplicable and we should disregard the United States Supreme Court's discussion and resolution of the "historical question" of whether, under the early English common law, there was a right to jury trial in governmental actions seeking civil penalties. In their return, the People asserted the mere fact *Tull* was "decided under the Seventh Amendment to the United States Constitution . . . [which] does not apply to the States" made the case inapplicable. As they correctly

9

observed, "[t]he civil jury trial provision of the Seventh Amendment has been applied only in federal judicial proceedings." (*Shaw*, *supra*, 2 Cal.5th at p. 993, fn. 8, italics omitted.)  However, this point is immaterial if, in substance, the analytical template employed by the United States Supreme Court under the Seventh Amendment is essentially the same as that used by our own high court under article I, section 16 of the California Constitution.

Thus, at oral argument, the People urged that the analysis the United States Supreme Court employs in resolving civil jury trial issues (and which it employed in *Tull*) is different from the approach the California Supreme Court now employs.  While acknowledging that the jury trial analysis our high court used in *1941 Chevrolet* was, in substance, the same as that used by the United States Supreme Court in *Tull*, the People maintained that since *1941 Chevrolet*, the California high court has taken "its own path" (and one that is "more thoughtful and more nuanced") in analyzing the right to jury trial. The People pointed to *C & K Engineering* and our high court's most recent jury trial decision in *Shaw*, as reflecting this supposed different, and apparently more restrictive, approach to analyzing the right to jury trial.

In our view, neither *C & K Engineering* nor *Shaw* reflect a departure from the jury trial analysis our high court enunciated and applied in *1941 Chevrolet*.

In *C & K Engineering*, the court considered whether the defendant subcontractor, which had supplied a bid to the plaintiff general contractor but then reneged on it, was entitled to a jury trial in a lawsuit brought by the general and "based entirely upon the equitable doctrine of promissory estoppel." (*C & K Engineering*, *supra*, 23 Cal.3d at p. 5.)  As the court explained, the general contractor had no viable legal claim against the subcontractor because, although the general contractor relied on the subcontractor's bid, the parties never actually enter into a contract; rather, the subcontractor had made only a "gratuitous" promise to perform. (*Id.* at pp. 5–6, 9.)  However, given the importance of such bids and the severity of harm that flows from a subcontractor's refusal to perform as promised, the courts have embraced the doctrine of promissory estoppel to provide relief to the jilted general contractor. (*Id.* at p. 6.)  The court thus described the doctrine as

10

"essentially equitable in nature, developed to provide a remedy (namely, enforcement of a gratuitous promise) which was not generally available in courts of law prior to 1850." (*Id.* at p. 8.)

The *C & K Engineering* court reiterated that the state constitutional right to jury trial " 'is a matter of right in a civil action at law, but not in equity.' " (*C & K Engineering*, *supra*, 23 Cal.3d at p. 8, quoting *Southern Pac. Transportation Co. v. Superior Court* (1976) 58 Cal.App.3d 433, 436.) Then, quoting favorably from *1941 Chevrolet,* the court stated: " ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case[,] the gist of the action." ' " (*C & K Engineering*, at p. 9, italics omitted, quoting *1941 Chevrolet*, *supra*, 37 Cal.3d at p. 299.) "On the other hand, if the action is essentially one in equity and the relief sought 'depends on the application of equitable doctrines,' the parties are not entitled to a jury trial." (*C & K Engineering*, at p. 9.) As the court had explained, the complaint against the subcontractor sought "relief which was available only in equity, namely the enforcement of defendant's gratuitous promise to perform its bid through application of the equitable doctrine of promissory estoppel." (*Ibid.*)

The court also distinguished a prior opinion in which it had upheld a right to jury trial, pointing out the court had "stressed" in that case that "dual theories of traditional breach of contract and promissory estoppel" had been tried, and thus, promissory estoppel " 'was only one of two alternative theories of recovery.' " (*C & K Engineering*, *supra*, 23 Cal.3d at p. 10, italics omitted, quoting *Raedeke v. Gibralter Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 674 (*Raedeke*).) That was not so in the case before it.

The high court also explained why the plaintiff general contractor's request for "damages" did not make the case a legal one. Regardless of how the relief sought might be characterized, the action, based solely on the doctrine of promissory estoppel, was "one recognized only in courts of equity" and was not an " 'action at law,' involving, to

11

use the *Raedeke* language, the 'incidental adoption of equitable sounding measures.' " (*C & K Engineering*, *supra*, 23 Cal.3d at p. 10.) "The only manner in which damages have been recognized in such cases of gratuitous promises is by application of the equitable doctrine of promissory estoppel. . . . Without the employment of this doctrine, essentially equitable, there was no remedy at all." (*Ibid.*)

We discern nothing in *C & K Engineering* reflecting a departure from the court's analytical approach explicated in *1941 Chevrolet*. On the contrary, in *C & K Enginering*, our high court quoted from and cited extensively to *1941 Chevrolet*, as well to other earlier jury trial opinions. What the *C & K Engineering* court, applying the same standard it had applied in *1941 Chevrolet*, concluded is that there is no historical English common law analog to an action based solely on the equitable doctrine of promissory estoppel and, accordingly, there is no state constitutional jury trial right in such a case. The court also made clear that the fact the plaintiff general contractor sought "damages" did not change the "historical" and fundamental fact that the contractor's claim had its origins solely in the courts of equity in which there was no right to jury trial.

In *Shaw*, the court considered whether a health care worker had a right to jury trial in connection with a cause of action for retaliatory discharge against her former employer under the Health and Safety Code section 1278.5, subdivision (g). (*Shaw*, *supra*, 2 Cal.5th at p. 987.) Pursuant to that claim, the plaintiff sought compensatory and emotional distress " 'damages,' " as well as lost salary and benefits, and fees and costs. (*Id.* at pp. 988–989.) Accordingly, the "specific question" before the court was whether there "is a right to a jury trial in the civil action authorized by [Health and Safety Code] section 1278.5(g) when, as in this case, a plaintiff . . . seeks to recover compensatory damages as well as other relief in such an action." (*Id.* at p. 996.) The plaintiff also asserted a *Tameny*[6] cause of action for wrongful discharge in violation of public policy. (*Id.* at pp. 987–988.)

---

[6] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167.

12

After concluding a party may properly challenge the denial of jury trial by way of an original writ proceeding in the Court of Appeal, the high court turned to the jury trial issue. (*Shaw*, *supra*, 2 Cal.5th at pp. 990–993.) The court first concluded the statute, itself, even though "significantly expanded" to permit the recovery of " 'any remedy' " available at statutory or common law, does not afford a right of jury trial. (*Id.* at pp. 993–1003.) "[E]ven assuming that the Legislature intended to permit the imposition of legal as well as equitable remedies in an appropriate case, we conclude that [Health and Safety Code] section 1278.5(g) still is not reasonably understood, as a matter of statutory interpretation, to afford a right to a jury trial. . . ." (*Id.* at p. 999.)

The court then turned to whether there is a state constitutional right to jury trial in connection with such a claim—but it did not decide the issue, given the availability of a *Tameny* claim as to which there is a right to a jury trial. (*Shaw*, *supra*, 2 Cal.5th at pp. 1003–1005.) "[W]e need not decide whether the gist of an action for retaliatory termination under [Health and Safety Code] section 1278.5(g) in which damages are sought is legal or equitable in nature, because an action under section 1278.5(g) is not the only means under California law by which a plaintiff can obtain a jury trial on a claim for damages for retaliatory termination." (*Id.* at pp. 1003–1004.) "[U]nder the terms of [Health and Safety Code] section 1278.5 itself, the cause of action established by section 1278.5(g) is expressly *in addition to* any other remedy a health care whistleblower otherwise possesses." (*Id.* at p. 1004.) "One such remedy, of course, is a health care employee's right to bring a civil action for retaliatory termination under this court's decision in *Tameny*" (*ibid.*), as to which there is a right to jury trial. (*Id.* at p. 1005.) Thus, "in the retaliatory termination context[,] a health care employee who chooses to bring both a *Tameny* cause of action and a cause of action under [Health and Safety Code] section 1278.5(g) retains the right in the *Tameny* action to have a jury determine whether he or she is entitled to recover damages and the amount of damages to be recovered for such unlawful termination." (*Id.* at p. 1006.)

The *Shaw* court additionally addressed a lurking procedural issue, namely the holdings in some cases that, in a case involving both legal and equitable claims, a trial

13

court "has discretion to rule first on the equitable claim" which "may obviate a jury trial of the legal claim if the trial court's ruling is dispositive of an issue crucial to the legal claim." (*Shaw*, *supra*, 2 Cal.5th at p. 1006.) The high court ruled the trial court could *not* take such a course—"the court may not deprive the plaintiff of the right to a jury determination of the *Tameny* cause of action by ruling first on the [Health and Safety Code] section 1278.5(g) claim." (*Ibid.*) "[C]onsistent with the purpose of [Health and Safety Code] section 1278.5, subdivision (m), when a plaintiff seeks a jury trial in a *Tameny* cause of action the court must permit the jury to resolve the *Tameny* claim and thereafter give effect to the jury's resolution in its determination of any remaining issues in the section 1278.5(g) cause of action." (*Ibid.*)

Again, we see nothing in *Shaw* that suggests our high court has distanced itself from the analytical template it approved and applied in *1941 Chevrolet*. Indeed, the court's single most comprehensive paragraph in *Shaw* on the nature of the state constitutional right to jury trial consists of a lengthy block quote from *C & K Engineering* quoting *1941 Chevrolet*. (*Shaw*, *supra*, 2 Cal.5th at p. 995.)

Accordingly, in our view, there is little distinction between the federal constitutional right to jury trial analysis the United States Supreme Court has set forth and applied in cases like *Tull*, and the nature-of-the-action and remedy analysis our Supreme Court has mandated under California's constitutional right to jury trial. Divining the "gist" of an action and the remedies sought, as required under our state constitutional law, is no different than examining the "nature" of an action under federal constitutional law. As our high court has repeatedly stated, the "gist" of an action is determined by examining " ' " 'the nature of the rights involved and the facts of the particular case.' " ' " (*Shaw*, *supra*, 2 Cal.5th at p. 995, quoting *C & K Engineering*, *supra*, 23 Cal.3d at pp. 8–9, quoting *1941 Chevrolet*, *supra*, 37 Cal.2d at p. 283.) The United States Supreme Court's phraseology is almost the same—the court "must examine both the nature of the action and [] the remedy sought." (*Tull*, *supra*, 481 U.S. at p. 417.)

The only substantive variance between the federal and state civil jury trial analyses that we can see is that the federal analysis looks to the common law as of 1791, when the

14

Seventh Amendment was adopted, while California's analysis looks to the common law as of 1850, when the California Constitution was adopted. (See *Granfinanciera*, *supra*, 492 U.S. at pp. 41–42; *1941 Chevrolet*, *supra*, 37 Cal.2d at pp. 286–287.) The People have not "adduced any authority," however, "suggesting that any change occurred in the common law between 1791 . . . and 1850." (*Wisden v. Superior Court* (2004) 124 Cal.App.4th 750, 756 (*Wisden*). Thus, *Wisden* recognized that federal jury trial cases are persuasive authority in analyzing the right to jury trial secured by our state constitution. (*Id.* at pp. 756–757.)

Accordingly, *Tull's* discussion of the historical legal facts establishing the types of actions triable by jury at common law is highly pertinent to the instant case. (See *Wisden*, *supra*, 124 Cal.App.4th at pp. 757–759 [the relevance of federal jury trial cases "lies not in [their] holding under the Seventh Amendment, but in [their] recitation of the historical facts establishing that an action . . . was triable by a jury at common law in late 18th-century England"].) And we therefore follow the United States Supreme Court's instruction that as a matter of purely "historical" legal fact "English courts had held that a civil penalty suit was a particular species of an action in debt that was within the jurisdiction of the courts of law." (*Tull*, *supra*, 481 U.S. at p. 418; see *C & K Engineering*, *supra*, 23 Cal.3d at p. 8; *1941 Chevrolet*, *supra*, 37 Cal.2d at pp. 287–289, 295.) Thus, *Tull's* pronouncement that as a matter of historical fact a "civil penalty was a type of remedy at common law that could only be enforced in courts of law" (*Tull*, at p. 422) is entirely applicable to this case.

Indeed, as we have pointed out, our high court said the same thing about government civil penalty actions in *1941 Chevrolet*. (*1941 Chevrolet*, *supra*, 37 Cal.2d at p. 295 & fn. 15.) In conducting a detailed historical analysis of the common law, the California court explained, " 'At common law the trial of actions for forfeiture to the Crown of property used in violation of law was in the Court of Exchequer. "The term 'Common Law' often refers to those principles of English Law which were evolved in the Common Law Courts, as opposed to the principles which were applied in the Courts of Chancery and Admiralty and the Ecclesiastical Courts. The Courts of Common Law

15

before the passing of the Judicature Acts, 1873-5, were the three Royal Courts of King's Bench, Common Pleas or Common Bench, and Exchequer. . . ." [Citation.] The Court of Exchequer was not a criminal court; and all suits for penalties, though for the King, were considered as civil. [Citation.] . . . The proceedings of the Court of Exchequer were originally confined to bills by the Attorney General to recover money or property for the Crown. [Citation.] It was originally, and continued to be, a common-law court.' " (*Id*. at pp. 288–289, fn. omitted.) The court further added, "*[c]ases involving penalties to the Crown,* other than forfeiture of conveyances and goods*, were also tried by a jury* in the Court of Exchequer." (*Id*. at p. 295, italics added.) The court then cited over 25 English cases, from the 1600's through the 1800's, in support of this historical fact. (*Id*. at p. 295, fn. 15.)

Similarly, in *Grossblatt v. Wright* (1951) 108 Cal.App.2d 475, the Court of Appeal analyzed English common law and concluded statutory penalties were recoverable in an action for debt at common law. The specific issue in *Grossblatt* was whether there was a right to jury trial in an action to recover treble damages under the United States Housing and Rent Act of 1947. (*Id*. at p. 477.) The court concluded such treble damages were "in the nature of penalties." (*Id.* at p. 485.) "Statutory penalties existed at common law, and debt was the appropriate action for the recovery thereof where no other remedy was specified, because the money due under such statute gave rise to a debt, the underlying theory being an implied promise which the law annexed to the liability." (*Id*. at pp. 484–485.) In short, what the common law of England in the 1800's established, said the court, was that " '[i]f an act of parliament inflict a certain penalty for a particular act, an action of debt will lie for the penalty.' " (*Id.* at p. 484, fn. 18, italics omitted, citing Archbold, Plead. & Evid. (Civ. Actions) (1837), p. 17.) Accordingly, an "action (writ) of debt was the general remedy at common law for the recovery of all sums certain, or sums readily reducible to a certainty, whether the legal liability arose from contract or was created by statute." (*Grossblatt*, at p. 484, fn. omitted.) This historical fact has not changed.

Thus, both the United States Supreme Court and the California Supreme Court have unequivocally stated that a government action seeking civil penalties for retribution

16

and/or deterrence purposes is the kind of case that, under the historic English common law, would have been tried in the courts of law and as to which defendants had a right to jury trial.[7]

Whether or not the United States Supreme Court in *Tull* used an analytical template "different" from that used in recent years by California courts, which as we have discussed it did not, the People additionally assert *Tull* is inapplicable because "[i]n essence, *Tull* was *only* about penalties," since injunctive relief in that case, according to the People, was "effectively no longer appropriate." The People are incorrect. In *Tull*, the government sought *both* "civil penalties and injunctive relief under the Clean Water Act." (*Tull*, *supra*, 481 U.S. at p. 414.) While it is true that "almost all of the property at issue had been sold" by the time the federal government filed its complaint (*id.* at p. 415), the government nevertheless "obtained injunctive relief" relating to some of the property. (*Id.* at p. 415, fn. 2.) Furthermore, the fact there no longer was a need for significant injunctive relief played no role in *Tull's* jury trial analysis. Finally, we observe that the People do not dispute that here they *are* seeking very significant statutory penalties against petitioners.[8]

---

[7] While the People contend, contrary to *Tull*, that civil penalties are not intended to punish or deter, but simply "to secure compliance with the law and implementation of legislative policy," the UCL cases they cite do not so conclude nor did they consider whether there is a right to jury trial under article I, section 16 of the state constitution. These cases state only that " '[i]mposition of civil penalties has, increasingly in modern times, become a means by which legislatures implement statutory policy.' " (*People v. Superior Court (Olson)* (1979) 96 Cal.App.3d 181, 196; see *People v. Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283, 289, fn. 3.) The only case cited by the People stating a statutory penalty's "primary purpose" is to "secure obedience to statutes and regulations," concerned the penalty provisions of the Long-Term Care, Health, Safety, and Security Act of 1973 (Health & Saf. Code, § 1417 et seq.). (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 147–148.) In any case, securing compliance with statutory law through the pressure of significant civil penalties seems to us to fit well within the notion of punitive action by the government against culpable individuals and actions aimed at "the need for retribution and deterrence." (*Tull*, *supra*, 481 U.S. at p. 422.)

[8] For its part, Nationwide, embracing the People's inaccurate characterization of *Tull* as involving only statutory penalties, claims this case is also only about penalties,

17

We therefore conclude petitioners have a right to jury trial as to their *liability* under the statutes raised herein, which, as we have noted, determines that they *will* face statutory penalties. In fact, the statutory penalty provisions at issue here, particularly that of the UCL, are remarkably similar to the penalty provision of the Clean Water Act at issue in *Tull*. For all the reasons we have discussed, the People have not presented any cogent reason why we should not follow the lead of the United States Supreme Court as set forth in that case.[9]

However, consistent with the Supreme Court's decision in *Tull*, we also conclude the *amount* of any statutory penalties is committed to the discretion of the trial court. Like the Clean Water Act at issue in *Tull*, the Business and Professions Code sections at issue here expressly state that the court shall assess the penalty (§§ 17206, subd. (b), 17536, subd. (b)), and as the United States Supreme Court held in *Tull*, committing the determination of the amount of a civil penalty to the courts does not abridge the constitutional right to jury trial. Accordingly, if the jury returns a liability verdict, it will be the trial court's obligation to consider the enumerated statutory factors and exercise its discretion in setting the appropriate amount of the statutory penalties.

---

since Nationwide voluntarily surrendered its corporate real estate brokerage license in 2016. It also claims it faces potentially $19.25 billion in penalties.

While we grant the People's request for judicial notice of the order accepting the surrender of Nationwide's license, as well as of the accusation filed by the Bureau of Real Estate which preceded the surrender, (Evid. Code, § 452, subd. (c)), that some equitable relief may ultimately be appropriate in this case does not abridge the right to jury trial in a governmental action for statutory penalties. (*Tull, supra*, 481 U.S. at p. 425; see *C & K Engineering, supra*, 23 Cal.3d at p. 11 [fact damages could be sought, along with equitable remedies, did not alter the historically equitable character of a claim for promissory estoppel].)

[9] At oral argument, the People also seemed to suggest that finding a right to jury trial would place a burden on civil enforcement offices and the trial courts that these institutions can ill afford. The People have provided us with no indication that *Tull* has brought federal civil enforcement offices or the federal trial courts to their knees. In any case, the constitutional right to jury trial does not expand and contract with available resources.

18

We additionally point out, as our high court did in *Shaw*, that the right to jury trial on the issue of liability cannot be vitiated under the rubric of first trying any equitable issues. (See *Shaw*, *supra*, 2 Cal.5th at p. 1006.) Yet, during oral argument, the People asserted any right to a jury trial would be pointless because they could, and would, ask the trial court to first try the issue of equitable relief. This is exactly the result the *Shaw* court held was impermissible. (*Ibid.*) In fact, procedurally, *Shaw* was more like the cases that have held trial courts may try an equitable *claim* separately from and prior to a legal one, than the instant case, as *Shaw* involved both a statutory claim and a *Tameny* claim. However, in considering whether there is a right to jury trial under the UCL and the FAL (False Advertising Law), we are not dealing with separate *claims* in the sense that one claim for statutory penalties is legal and the other is equitable. Rather, we are dealing with a situation where, in addition to the recovery of statutory penalties (historically a legal remedy), both statutes also authorize equitable remedies. In other words, while there are an array of *remedies* under these two statutes, they all flow from what are historically legal *claims* by the government and as to which there is a right to jury trial. Thus, to paraphrase *Shaw*, the trial court "must permit the jury to resolve" statutory *liability* and "thereafter give effect to the jury's resolution" of that threshold issue "in its determination of any remaining issues." (*Id.* at p. 1006.)

## C. *Prior UCL Cases Either are Not on Point or Did Not Fully Analyze the Jury Trial Issue*

The People maintain that, should we conclude petitioners have a right to jury trial in this case, we will be parting from "an unbroken line of appellate decisions finding no right to a jury trial in UCL or FAL actions, all where the People sought penalties." An examination of these cases shows that this is not so.

In *Spot*, for example, the People brought a civil enforcement action against medical marijuana distributors, alleging violations of the local municipal code, the Health and Safety Code, and the UCL. (*People Ex Rel. Feuer v. Superior Court (Cahuenga's The Spot)* (2015) 234 Cal.App.4th 1360, 1364 (*Spot*).) Citing *People v. Witzerman* (1972) 29 Cal.App.3d 169 (*Witzerman*), the *Spot* court summarily concluded there was

19

no right to jury trial because "the gist of an action under the UCL is equitable." (*Spot*, at p. 1384.)

*Witzerman*, in turn, was an enforcement action under the FAL. The defendants claimed they had a right to jury trial because "the case was a criminal prosecution for fines in all but name." (*Witzerman*, *supra*, 29 Cal.App.3d at pp. 173, 176.) The *Witzerman* court held "[t]he statutory action before us was not rendered criminal in nature because the People therein sought civil penalties." (*Id.* at p. 177.) "This being so, the right to a trial by jury '[in] all *criminal* prosecutions' guaranteed by *the Sixth Amendment* . . . does not apply in this case." (*Witzerman*, at p. 177, italics added.) The court added that, even if the civil penalties were considered a legal remedy, rather than a form of equitable relief, "we do not believe that in this case such issues could have been severed from the equitable ones." (*Id.* at pp. 176–177.) The *Witzerman* court provided no analysis as to why this was so. (See *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 156 [in "most instances" where cases involve both legal and equitable claims, the issues "are 'kept distinct and separate,' with legal issues triable by a jury and equitable issues triable by the court"].) Nor did the court discuss *Tull* or any other case addressing the right to jury trial in statutory penalty cases. (See *Tull*, *supra*, 481 U.S. at p. 425 [that Clean Water Act authorized both equitable relief and statutory penalties did not vitiate the right to jury trial on liability].)

*People v. Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 916 similarly focused on the Sixth Amendment. In that case, the defendant allegedly violated the UCL by violating Penal Code section 327, which prohibits " 'endless chain' " marketing schemes. (*Bestline*, at p. 886, fn. 3.) The trial court ruled the defendant was not entitled to a jury trial because "the relief sought in the complaint was essentially equitable in nature and the fact that imposition of civil penalties might also result did not serve to *change the nature* of the case." (*Id.* at p. 916, italics added.) Read in context, the trial court's reference to the "nature of the case," meant the government's request for penalties did not effectively make it a criminal case. (*Ibid.*) This is confirmed by the Court of Appeal's holding—that " '[t]he statutory action before us was not rendered *criminal in nature*

20

because the People therein sought civil penalties. . . .  In short, the punitive nature of a civil penalty does not make an action to obtain it completely criminal in nature. [Citation.]  This being so, the right to a trial by jury '[i]n all criminal  prosecutions' guaranteed by the *Sixth Amendment* to the United States Constitution does not apply in this case.' " (*Bestline*, at p. 916, italics added.)

In *People v. Superior Court* (*Kaufman*) (1974) 12 Cal.3d 421, the government sought statutory penalties for both unfair competition and deceptive advertising.  (*Id*. at p. 424, fn. 1.)  However, the issue before the California Supreme Court was not whether the defendant had a right to jury trial.  Rather, the issue was whether the trial court had jurisdiction to grant the defendant immunity from criminal prosecution and compel him to answer deposition questions he claimed would elicit incriminating responses.  (*Id*. at pp. 424–425.)  Moreover, in concluding that the trial court could compel the defendant to answer after issuing an appropriate protective order (*id*. at p. 433), our high court stated "neither [the penalty] nor the process by which it is imposed is deemed *criminal* in nature," noting that "defendants are not entitled to a jury trial at least pursuant to the *Sixth Amendment*."[10]  (*Kaufman,* at p. 431, & fn. 9, italics added.)

In *People v. First Federal Credit Corp*. (2002) 104 Cal.App.4th 721, the right to jury trial likewise was not at issue.  Rather, the issue in that case was whether the imposition of penalties under the UCL required "meaningful evidence of a defendant's financial condition," as does the imposition of punitive damages.  (*Id.* at p. 731.)  In concluding no such showing is required in connection with statutory penalties under the

---

[10]  Likewise, in *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, which the People also cite, the right to jury trial was not, itself, at issue.  Rather, in urging affirmance of the dismissal of an enforcement action seeking injunctive relief and civil penalties for distribution of obscene material, the defendant maintained the "civil *damages* provided in [Business and Professions Code] section 17206 would amount to a *penal* sanction which would violate due process of law if imposed without the full panoply of rights available in *a criminal trial*, such as . . . the right to jury trial."  (*Id*. at pp. 317–318, 321, italics added.)  Citing *Kaufman*, *Witzerman*, and *Bestline*—each of which considered only the *Sixth Amendment* right to jury trial in *criminal* proceedings— the court stated "[t]he law is well settled to the contrary."  (*E.W.A.P., Inc*., at p. 321.)

UCL, the Court of Appeal observed "the concern that juror passion or prejudice may affect a punitive damage award [citation] is absent in UCL cases because there is no right to a jury trial in such cases," citing to *People v. Toomey* (1984) 157 Cal.App.3d 1 (*Toomey*) but providing no additional analysis. (*First Federal*, at pp. 732–733.)

In *Toomey*, the People sued for unfair business practices and false advertising and obtained preliminary injunctive relief, enjoining the defendant from certain business practices, including making untrue or misleading representations in the sale of coupons. (*Toomey*, *supra*, 157 Cal.App.3d at pp. 6–7.) Because the defendant "admittedly made no significant changes in his business practices," the trial court found him in violation of the injunction and imposed a fine under Business and Professions Code section 17535.5. (*Toomey*, at pp. 7, 17 & fn. 6.) The defendant claimed the violation determination and imposition of the fine were akin to a contempt proceeding, and therefore he was entitled to a jury trial. (*Id*. at p. 17.) The Court of Appeal rejected this assertion, stating "it is now firmly established than an action brought pursuant to the unfair business practices act seeks only civil penalties, and accordingly the due process rights which apply in *criminal actions*, including the right to a jury trial, need not be provided." (*Id.* at p. 18, italics added.)

Thus, virtually all of the cases the People cite as establishing a supposed "line" of opinions holding there is no right to jury trial under the UCL and FAL, considered only the Sixth Amendment right to jury trial in criminal cases. We agree these cases make clear defendants cannot look to the Sixth Amendment as the source of any jury trial right in a statutory enforcement action seeking civil penalties, and, indeed, we agree these courts were correct in so holding. However, as we have discussed in the preceding sections of this opinion, the salient issue is not whether there is a Sixth Amendment right to jury trial in a civil enforcement action seeking statutory penalties. Rather, the pertinent question is whether there was a right to jury trial under early English common law in cases of this nature which is preserved by article I, section 16 of the California Constitution—an issue none of these cases addressed.

22

In only one case that the People cite, *People v. Bhakta* (2008) 162 Cal.App.4th 973, 978–979 (*Bhakta*), did the appellate court apply the gist-of-the-action analysis to conclude a government enforcement action was properly tried by the court.  In that case, the government sought injunctive relief and statutory penalties under the Red Light Abatement Law (Pen. Code, § 11225 et seq.) and the UCL, against a motel owner who allegedly ran a prostitution ring.  (*Bhakta*, at p. 976.)  The government first obtained preliminary injunctive relief, which was affirmed on appeal, and then obtained a permanent injunction and $10,000 in statutory penalties.  (*Ibid.*)  The Court of Appeal rejected the defendant's claim that he was entitled to a jury trial, stating " ' "the right of trial by jury did not exist at common law in a suit to abate a public nuisance" ' " and "the unfair competition law provides for only equitable remedies."  (*Id*. at p. 979.)  Respectfully, this is not an accurate description of the remedies under the UCL.  Indeed, in its analysis, the court did not even mention the availability of statutory penalties.  The availability of statutory penalties is *critical*, however, to the analysis of whether the right to jury trial is constitutionally secured.  (See *Tull*, *supra,* 481 U.S. at pp. 418–425; *1941 Chevrolet*, *supra*, 37 Cal.2d at p. 295, fn. 15.)  We thus conclude *Bhakta's* analysis was incomplete, and we decline to follow its holding.[11]

---

[11]  The *Bhakta* court cited *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284 (*Hodge*), for the proposition that the UCL provides for "only equitable remedies." (*Bhakta*, *supra*, 162 Cal.App.4th at p. 979.)  *Hodge*, however, was a wage and hour case in which the plaintiff employees sought back wages for overtime.  (*Hodge*, at pp. 281–282.)  The defendant employer claimed it had a right to jury trial because its liability was based on conduct that was "unlawful" under the Labor Code.  (*Id*. at p. 283.)  The *Hodge* court concluded otherwise, stating "the UCL provides only for equitable remedies," "[d]amages are not available."  (*Id*. at p. 284.)  Thus, said the appellate court, "the UCL is not simply a legislative conversion of a legal right into an equitable one.  It is a separate equitable cause of action."  (*Ibid.*)  In short, the *Hodge* court was not called upon to address, nor did it, the issue of statutory penalties sought in a government enforcement action.

Furthermore, in observing that other courts had held there is no jury trial right under the UCL, the *Hodge* court cited to *Bestline, Toomey,* and *First Credit*—all holding that there is no *Sixth Amendment* right to jury trial under UCL, a conclusion with which

23

In short, contrary to the People's assertion, there is no line of cases holding that there is no right to jury trial in a UCL enforcement action brought by the government and seeking statutory penalties. Rather, there is a line of cases holding that the Sixth Amendment right to jury trial in criminal cases is inapplicable to the UCL—a proposition with which we agree. Only one case, *Bhakta*, has concluded there is no right to a jury trial in a UCL enforcement action under article I, section 16 of the California Constitution. However, as we have discussed, in our view the *Bhakta's* court's analysis was incomplete and failed to take into account that statutory penalties are a significant remedy under the UCL and such penalties, under historic English common law, would have been sought in the courts of law, thus securing to defendants the right to jury trial. (See *Tull*, *supra*, 481 U.S. at pp. 418–425; *1941 Chevrolet*, *supra*, 37 Cal.2d at p. 295, fn. 15.)

Finally, the People point to this court's decision *DiPirro*, in which the court held there was no right to jury trial in an action by a private individual seeking injunctive relief, restitution, and civil penalties, as well as costs and attorney fees under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, §25249.5 et seq.) commonly referred to as Proposition 65. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 164.) The defendant supplied " 'Proposition 65' " warnings in the paperwork accompanying the .44 fluid once bottles of " 'touch up' " paint it manufactured, but did not include warnings on the bottles, themselves. (*Id.* at p. 164.)

---

we agree but which is not apposite to the right to jury trial in a civil case. (*Hodge*, *supra*, 145 Cal.App.4th at p. 285.)

We also note that no published opinion, let alone a government enforcement action seeking statutory penalties, has since cited *Bhakta* for the proposition that a UCL case is exclusively "equitable" in nature. (See *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1512–1515 [citing *Bhakta* for the proposition that the right to jury trial exists for actions at law, but not for equitable actions; holding no right to jury trial in an interpleader action]; *Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 904–911 [citing *Bhakta* for the proposition that whether there is a right to jury trial is a legal question; holding under gist-of-the-action test there is a right to jury trial in a quantum meruit case].)

The parties stipulated to first trying a potentially dispositive affirmative defense (the "warning exemption defense"), and the trial court, rather than a jury, decided the issue in favor of the defendant. (*Id.* at pp. 164–165, 175.)

The *DiPirro* court recognized that in applying the "gist of the action" analysis, it was required to first compare the statutory cause of action to early English common law actions prior to merger of the courts of law and equity. (*DiPirro*, *supra*, 153 Cal.App.4th at p. 180.) The court pronounced the Proposition 65 statutory scheme as "thoroughly infused with equitable principles," stating the "essential character and purpose of the [Safe Drinking Water and Toxic Enforcement] Act is equitable" and it is a " ' "remedial statute intended to protect the public." ' " (*Ibid.*, quoting *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 461–462.) It then stated "[t]he foremost consideration" before it was "that the *remedies* sought through an enforcement action under the Act are equitable in nature." (*DiPirro*, at p. 181.) "An action that seeks to enforce the consequences of the listing of a chemical," said the court, "fundamentally seeks a form of declaratory relief—that the product requires a warning under the Act— which is equitable in nature." (*Ibid.*)

The court went on to conclude the fact the plaintiff sought civil penalties did not "itself" require a jury trial (*DiPirro*, *supra*, 153 Cal.App.4th at pp. 181–182), observing " ' "an action is one in equity where the only manner in which the legal remedy of damages is available is by application of equitable principles." ' " (*Id.* at p. 182, quoting *Interactive Multimedia Artists, Inc. v. Superior Court* (1988) 62 Cal.App.4th 1546, 1555.) The court then cited to *Tull*, but only for the proposition that "[w]here . . . the statute has delegated the assessment of civil penalties in accordance with a highly discretionary calculation . . . , this is the kind of calculation traditionally performed by judges rather than a jury, and does not require a jury trial for that purpose in a civil action" (the point the *Tull* court made in concluding, secondarily, that a trial court can constitutionally determine the *amount* of a statutory penalty). (*DiPirro*, at p. 182.)

The *DiPirro* court devoted most of the rest of its discussion to making the point that the plaintiff, in asking for statutory penalties, was not seeking "compensation" for his

25

own injuries, such compensation, said the court, being the hallmark of a " 'legal' " claim. (*DiPirro*, *supra*, 153 Cal.App.4th at pp. 183–184.) In contrast, civil penalties under the Safe Drinking Water and Toxic Enforcement Act are "a statutory punitive exaction determined on the basis of equitable principles, designed to deter misconduct and harm, not to compensate the plaintiff for actual damages sustained." (*Id.* at p. 183.) In fact, said the court, "[t]he primary right to bring an action for civil penalties pursuant to the Act is also given to the state rather than individuals seeking compensation." (*Ibid.*) Indeed, a private plaintiff did not even need to prove that he or she sustained any damage at all in order to prosecute a Proposition 65 case. (*Id.* at p. 184.) "As such, the statutory remedies afforded by the Act, including civil penalties, are not damages at law, but instead constitute equitable relief appropriate and incidental to enforcement of the Act," and as such, concluded the *DiPirro* court do not give rise to a right to jury trial. (*Ibid.*)

The conclusion the *DiPirro* court reached as to Proposition 65 is not, of course, determinative of the right to jury trial under the UCL and the FAL. Furthermore, on reexamination of that case, and particularly the similarities between the relevant remedial language of Proposition 65 (*DiPirro*, *supra*, 153 Cal.App.4th at p. 181, fn. 20) and that of the Clean Water Act (*Tull*, *supra*, 481 U.S. at p. 422; 33 U.S.C. § 1319(d)), we have serious concerns that the *DiPirro* court overlooked the fact that *Tull* reached *two* significant conclusions—that a right to jury trial *does* exist as to *liability* in a government enforcement action seeking statutory penalties under the Clean Water Act, but such right does not exist as to the *amount* of the penalties.

The *DiPirro* court did not, for example, discuss *any* aspect of the Supreme Court's first holding in *Tull*, that a right to jury trial exists as to liability for statutory penalties, even though the entirety of *DiPirro's* analysis concerned the right to jury trial on the issue of liability. Thus, *DiPirro* made no mention of the Supreme Court's extensive discussion of historic English common law and determination that as a matter of "historical fact" actions by the government seeking civil penalties were tried to a jury in the courts of law. Rather, the *DiPirro* court made mention only of the high court's second holding, that the constitutional right to jury trial does not extend to determining

26

the amount of a statutory penalty. However, whether there was a jury trial as to the amount of statutory penalties was not an issue the *DiPirro* court ever reached. The *DiPirro* court also made no mention at all of *1941 Chevrolet*, which reached the same conclusion as *Tull* as to the fundamentally legal character of an action by the government seeking statutory penalties.

We also cannot reconcile the *DiPirro* court's apparent view that only "damages" that compensate a plaintiff for actual injury are "legal" in character. In fact, the very point the *DiPirro* court made as to the government's "primary right" to recover statutory penalties—that they are a "punitive exaction" designed to "deter misconduct and harm" (*DiPirro*, *supra*, 153 Cal.App.4th at p. 183)—is exactly why the Supreme Court concluded in *Tull* that such recovery by the government is "analogous to the 18th-century action in debt" which the courts have "rightly assumed" requires jury trial. (*Tull*, *supra*, 481 U.S. at pp. 420, 422 ["Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by the courts of law, not courts of equity."].)

Accordingly, not only did *DiPirro* not address the jury trial issues that are before us in this case, we cannot endorse *DiPirro's* analysis in any event, given its tension with *Tull* and our own high court's decision in *1941 Chevrolet*.

## IV. DISPOSITION

The petition for writ of mandate is granted in part and the order to show cause is discharged. A peremptory writ of mandate shall issue directing the respondent court to vacate its order striking petitioners' request for jury trial, and allowing jury trial of all issues except the determination of the amount of any statutory penalties to be awarded under Business and Professions Code sections 17206 and 17536 or Financial Code section 12105, subdivision (d).

27

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Dondero, J.


A150264, *Nationwide Biweekly Administration, Inc. v. Superior Court*

28

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. George Hernandez Jr.

Counsel:

Law Office of Alan S. Yockelson, Alan S. Yockelson; Ponist Law Group PC, Sean E. Poinst, for Petitioners.

No appearance for Respondent.

Matthew L. Beltramo and Nancy O'Malley, District Attorneys (Alameda), John Thomas Mitchell and Lisa Green, District Attorneys (Kern), Andres Humberto Perez, Edward Berberian and Jeremy M. Fonseca, District Attorneys (Marin), John Fulton Hubanks and Dean D. Flippo, District Attorneys (Monterey); California Department of Business Oversight, Mary Ann Smith, Deputy Commissioner, Sean Rooney, Assistant Chief Counsel, Robert R. Lux and William Horsey, Senior Counsel, for Real Party in Interest.